IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
PEGGY JONES, as            )
Administrator of the       )
Estate and Personal        )
Representative of Christy   )
Dawn Varden,               )
                           )
      Plaintiff,           )
                           )         CIVIL ACTION NO.
      v.                   )          2:15cv34-MHT
                           )             (WO)
THE CITY OF CLANTON,       )
                           )
      Defendant.           )
```

OPINION

Plaintiff Peggy Jones brings this 42 U.S.C. § 1983 case as administrator of the estate of Christy Dawn Varden, the original plaintiff in this case, who is now deceased. Administrator Jones claims that, in violation of the First, Eighth and Fourteenth Amendments, Varden was jailed because she was too poor to pay a small amount of bail money, which she was required to pay under the terms of defendant City of Clanton's bail schedule. Jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

The litigation is now before the court on the parties' joint motion for entry of final judgment as to all matters excluding attorney's fees. Based on the representations made on the record on July 1, 2015, and after a review of the entire record, the motion will be granted.

## I.  BACKGROUND

Administrator Jones claims that Varden was unconstitutionally jailed because she could not afford to pay the amount of money set by the Clanton Municipal Court's generic bail schedule. Although the facts remain disputed, the court will briefly review them--as alleged by Jones--to give background for the court's decision to approve the settlement.

Administrator Jones alleges that Varden was arrested and jailed for four misdemeanor offenses: shoplifting, resisting arrest, failure to obey a police officer, and possession of drug paraphernalia. At the time of Varden's arrest, the Clanton Municipal Court utilized a

2

generic bail schedule for new misdemeanor arrests, a schedule from which it did not deviate: $ 500 per charge (and $ 1,000 per DUI charge).  Those able to pay the amount of the bond always obtained immediate release. Those unable to pay were required to wait in jail until the next court date, typically held on Tuesday afternoons.  The bail schedule required payment upfront and provided no option to secure release on recognizance or by an unsecured bond (that is, a promise to pay the amount only if one did not appear for the scheduled court date).[1]

Administrator Jones alleges that under the terms of the bail schedule, Varden could have been released immediately had she paid a bond of $ 500 per charge, or $ 2,000 in total.  Varden was indigent, however, and too

---

1. Some people who cannot make this payment seek the assistance of third-party commercial bail agents, who typically charge an upfront fee of 10 %.  Thus, a bonding agent would charge $ 50 for each $ 500 cash bond. However, the availability of third-party agents is not guaranteed, and agents are free to refuse to pay for the release of any arrestee.  Further, some arrestees cannot afford even the 10 % fee.

poor to pay this amount.  Because she was arrested on a Tuesday, after the weekly court hearings had already occurred, she would have been forced to remain in jail for seven days, until the next week's hearings, before any judge reviewed her imprisonment or determined that the required bail was appropriate and reasonable in the context of her individualized circumstances.  However, upon learning of the lawsuit, the city released her from jail a day after her arrest.

Jones also alleges that at the time Varden was arrested, the municipal court enforced a policy of barring the public from its courtroom.

The parties agree that, in the time since this lawsuit was filed, the city's municipal-court policies as to both bail and public access have changed. Specifically, while the standard bail schedule for secured bonds remains the same, any person arrested on a misdemeanor violation is now released on an unsecured appearance bond as long as she has no outstanding warrant for failure to appear.  Thus, the arrestee can be

4

released without any upfront payment, but will be required to pay the bond if she does not appear for her scheduled court date. An arrestee who has an outstanding failure-to-appear warrant is required to post a cash bond, commercial surety bond, or signatory bond (backed by real property) in the amount established by the bail schedule. The current policy also allows city officials to deny the release of anyone who poses a danger to herself or others or whose release is precluded by statute.

For a person who does not obtain immediate release under this policy, the municipal court will now hold a hearing within 48 hours of arrest to make an individualized determination as to whether the person may be released, and if so, under what conditions. The court understands the requirement in the city's current policy guaranteeing "the arrestee ... the opportunity to object to the bail amount set for him or her" to mean that the municipal court will consider objections regarding ability to pay in determining the necessity and

appropriate amount of bail and whether to use an
alternative to bail.  A new policy also allows the public
access to the courtroom during court sessions.


## II. DISCUSSION

With the now pending joint motion for entry of final
judgment and the settlement agreement in support of it,
the parties seek a judgment that, among other things, (1)
resolves all disputes in this matter with the exception
of attorney's fees; (2) declares that the Clanton
Municipal Court's current bail practices, as they are
reflected in the settlement agreement, are facially
constitutional; (3) requires that the parties comply with
the settlement agreement; and (4) dismisses this
litigation with the exception that the court retains
jurisdiction to enforce the settlement agreement and to
resolve the matter of attorney's fees.

Because a court's declaration reflects its own views,
this court has an independent obligation to make sure
that the declaration is accurate and appropriate.  Having

reviewed the Clanton Municipal Court's current bail practices, the court, as explained below, agrees with the parties that, facially, they are consistent with applicable law and, as result, the court will enter the requested declaration.

The Fourteenth Amendment prohibits "punishing a person for his poverty," Bearden v. Georgia, 461 U.S. 660, 671 (1983), and this includes deprivations of liberty based on the inability to pay fixed-sum bail amounts. Indeed, this principle applies with special force to criminal defendants awaiting trial, who have not been found guilty of any crime. See United States v. Salerno, 481 U.S. 739, 750 (1987) (recognizing the fundamental nature of the right to pretrial liberty).

While the "[u]tilization of a master bond schedule provides speedy and convenient release for those who have no difficulty in meeting its requirements," "[t]he incarceration of those who cannot [meet them], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection

requirements." <u>Pugh v. Rainwater</u>, 572 F.2d 1053, 1057 (5th Cir. 1978)[2].

Thus, the use of a secured bail schedule to detain a person after arrest, without an individualized hearing regarding the person's indigence and the need for bail or alternatives to bail, violates the Due Process Clause of the Fourteenth Amendment.  <u>See</u> <u>Pugh</u>, 572 F.2d at 1056–57 ("[I]mprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible. ...  Such requirement as is necessary to provide reasonable assurance of the accused's presence at trial is constitutionally permissible.  Any requirement in excess of that amount would be inherently punitive and run afoul of due process requirements."); <u>Bearden</u>, 461 U.S. at 673-74 (explaining, in the context of probation, that to deprive a person "of his conditional freedom simply because, through no fault of his own, he cannot

_____

2. In <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

8

pay the fine ... would be contrary to the fundamental
fairness required by the Fourteenth Amendment."); <u>State
v. Blake</u>, 642 So. 2d 959, 968 (Ala. 1994) ("Under Alabama
law a defendant has an absolute right to bail in all
noncapital cases.  A system of bail based totally on some
form of monetary bail, and not providing for release on a
defendant's own recognizance in appropriate
circumstances, would be unconstitutional.") (internal
citations omitted).

Under this precedent, the court finds that, facially,
the Clanton Municipal Court's new bail policy, as
reflected in the municipal court's new standing order,
<u>see</u> joint motion for entry of final judgment (doc. no.
72-2) at 8-9, and the court's above explanation of its
understanding of that policy, <u>see</u> <u>supra</u> at 5-6, meets
constitutional due-process standards.  This court need
not--and will not--determine whether the new policy
merely constitutes the constitutional minimum or goes
beyond what is required.  But it does commend the city
and the municipal court for taking swift action to

9

rectify the former policies.  Bail schemes such as the one formerly enforced in the municipal court result in the unnecessary pretrial detention of people whom our system of justice presumes to be innocent.  This period of detention "has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness."  <u>Barker v. Wingo</u>, 407 U.S. 514, 532 (1972).  It can also impede the preparation of one's defense, <u>see</u> <u>id</u>. at 533 (noting that pretrial detention hinders a defendant's "ability to gather evidence, contact witnesses, or otherwise prepare his defense"); it can induce even the innocent to plead guilty so that they may secure a quicker release, <u>see</u> Andrew D. Leipold, "<u>How the Pretrial Process Contributes to Wrongful Convictions</u>," 42 Am. Crim. L. Rev. 1123, 1154 (2005); and it may result in a period of detention that exceeds the expected sentence, <u>see</u> Stephanos Bibas, "<u>Plea Bargaining Outside the Shadow of Trial</u>," 117 Harv. L. Rev. 2463, 2492 (2004).  Moreover, unnecessary pretrial detention burdens States, localities, and taxpayers, and

10

its use appears widespread: nationwide, about 60 % of
jail inmates are pretrial detainees, and the majority of
those people are charged with nonviolent offenses.  **See**
Todd D. Minton and Zhen Zeng, U.S. Dep't of Justice,
Bureau of Justice Statistics, **Jail Inmates at Midyear
2014**, at 4, http://www.bjs.gov/content/pub/pdf/jim14.pdf
(PDF replication in this litigation (doc. no. 75));
Richard Williams, **Bail or Jail**, State Legislatures, May
2012, http://www.ncsl.org/research/civil-and-criminal-
justice/ bail-or-jail.aspx (PDF replication in this
litigation (doc. no. 75)).

Criminal defendants, presumed innocent, must not be
confined in jail merely because they are poor.  Justice
that is blind to poverty and indiscriminately forces
defendants to pay for their physical liberty is no
justice at all.  By enacting a new policy that takes
account of the circumstances of those who come before its
courts, the Clanton Municipal Court has made marked
strides in improving the quality of the justice it
delivers.  **Cf**. **Griffin v. Illinois**, 351 U.S. 12, 16

11

(1956) ("Providing equal justice for poor and rich, weak and powerful alike is an age-old problem. People have never ceased to hope and strive to move closer to that goal.").

\*\*\*

The court will, therefore, enter an appropriate judgment granting the parties' joint motion for entry of final judgment and, in accordance with that motion, (1) declaring that the Clanton Municipal Court's current bail policies are facially constitutional, (2) requiring that the parties comply with their settlement agreement, and (3) dismissing administrator Jones's claims with prejudice albeit with the exception that the court will

retain jurisdiction over the case to enforce the settlement agreement and adjudicate the matter of attorney's fees.

DONE, this the 14th day of September, 2015.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE