**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | | |
|---|---|---|
| MAURICE WALKER, on behalf of himself and others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. |
| | : | 4:15-cv-00170-HLM |
| CITY OF CALHOUN, GEORGIA, | : | |
| | : | |
| Defendant. | : | |

_____

## DEFENDANT CITY OF CALHOUN'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**I.    INTRODUCTION.**

In this case, Plaintiff alleges that he was wrongfully detained, in violation of his constitutional rights, as a result of a statutorily-proscribed bail practice. (Compl. [Doc. 1] ¶ 2; *see* Pl.'s Mot. for Prelim. Injunction Memo. [Doc. 7] ("Pl.'s Br.") at 1-2.)  But the weight of authority in this Circuit, and nationally, holds that code provisions such as O.C.G.A. § 17-6-1(f)(1) are facially constitutional, and add judicial economy to the criminal process.  Because Plaintiff cannot meet his burden, this Court should deny his Motion for Preliminary Injunction.

II.   STATEMENT OF RELEVANT FACTS.

   A.   Plaintiff's arrest and municipal court proceedings.

Plaintiff was arrested on Thursday, September 3, 2015 after Officer Heath Everett found him stumbling as he walked in the roadway of Georgia State Route 53 Spur and determined that Plaintiff appeared to under the influence of alcohol. (Aff. of Samual Heath Everett (Ex. 1) ¶¶ 2-4.)  Plaintiff was placed in custody for a suspected violation of O.C.G.A. § 40-6-95, and transported to the Gordon County Jail for booking and processing.  (*Id.* ¶ 6.)

Immediately following the Labor Day holiday, Plaintiff filed suit on Tuesday, September 8, 2015. (*See* Compl.)  He was released from custody on his own recognizance on Wednesday, September 9, 2015 at 4:45 P.M. by agreement of counsel. (Prisoner Release Authorization (Ex. 2).)  Arraignment was scheduled for Monday, October 12, 2015, at 5:00 P.M. (Calhoun Municipal Court Ticket Information Sheet (Ex. 3).)

On Monday, October 12, 2015 a financial bond in the amount of $160.00 was tendered by electric means through the online provider utilized by the Municipal Court. (Aff. of Matthew Chad Silvers (Ex. 4) ¶ 3.)  Neither Plaintiff nor his counsel of record appeared for his arraignment.  The case was disposed of on Monday, October 19, 2015 by the entry of a "bond forfeiture," and the criminal

case was closed on Tuesday, October 20, 2015. (*See* Calhoun Municipal Court Ticket Information Sheet (Ex. 3).)

On November 23, 2015, the Chief Judge of the Municipal Court for the City of Calhoun, Georgia entered a "Standing Order Regarding Pre-Trial Appearance, Establishment Of Bonds In Advance Of Initial Appearance Pursuant To State Law And Individualized Indigency Determinations" (the "Standing Bail Order"). (Standing Bail Order (Ex. 5).) The Standing Bail Order re-adopted and re-affirmed the written and established schedule of secured bail. (Standing Bail Order at 3.) Additionally, the Standing Bail Order provided that the Municipal Court would now include all forms of bail authorized by the Georgia General Assembly. (*Id.*) Part three of the Standing Bail Order provides a process by which individuals who were still in the custody of the Gordon County Jail within 48 hours from their arrest without having posted a secured form of bail are to be brought for a "first appearance" in accordance with Georgia Uniform Superior Court Rule 26.1. (*Id.* at 5.) At that "first appearance," the Judge of Municipal Court will make an individualized factual determination of whether the accused shall qualify as an "indigent person" as defined by O.C.G.A. § 17-2-2(6)(A). (*Id.* at 5.) The guidelines for determining financially whether an accused is an "indigent person" shall be "100 percent of the federal poverty guidelines." (*Id.* at 6.) Finally, the

52202.1

new procedure employed by the Municipal Court will employ a release on a "recognizance bond" if the accused is found to be an "indigent person" or has not been provided with a timely "first appearance." (*Id.*)

**B.    The Plaintiff has not provided evidence that he was indigent.**

Plaintiff's status as indigent person is alleged through his own affidavit. (*See* Aff. of Pl. [Doc. 1-2].)  But Plaintiff does not provide any facts or any objective standard by which to determine that he is, in fact, "indigent."  (*See id.*)

**III.    ARGUMENT AND CITATION OF AUTHORITY.**

**A.    Preliminary Injunction Standard.**

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four prerequisites."  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal citations and punctuation omitted).  Those four prerequisites are:  (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered without the injunction; (3) the threatened injury outweighs any damage the proposed injunction may cause the opposing party; and (4) the injunction is not adverse to the public interest.  *See id.* at 1175.

**B.    Plaintiff has failed to demonstrate a substantial likelihood of success on the merits.**

**1.    *Plaintiff has not applied for a writ of habeas corpus.***

Plaintiff challenged his continued custody in the Gordon County Jail for an inability to meet the requirement of a secured bail for pre-trial release.  (*See* Compl.)  And he has argued that "[t]he rule that poverty and wealth status have no place in deciding whether a person should be incarcerated relies on some of the most fundamental principles of American law." (Pl.'s Br. at 7.)  Seeking protection for the putative class, Plaintiff demands an immediate injunction to bar the use of a bail schedule, which is explicitly authorized by Georgia law.

It is well established that a § 1983 suit filed by an individual in custody "is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or duration." *Wilkinson v. Dotson*, 544 U. S. 74, 82 (2005); *see Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973) (language of § 2254 being more specific than § 1983, habeas is the exclusive remedy to challenge confinement fact or duration); *see also Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (habeas is the sole vehicle for inmate's constitutional challenge for declaratory relief and monetary damages attacking invalidity of sentence).

The same rule controls in this circuit:  habeas corpus is the exclusive remedy

-5-

for a non-federal prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release. *Bradley v. Prior*, 305 F.3d 1287, 1289 (11th Cir. 2002); *see also Waterfield v. Law*, 546 F. App'x 841 (11th Cir. 2013) (denial of § 1983 injunction proper where claim challenges validity of confinement or duration as plaintiff must pursue relief through habeas petition).  If the very core of the suit is an ultimate result creating immediate release, then habeas corpus is the only cognizable petition for relief. *Gipson v. Jefferson Co. Sheriff's Off.*, 613 F.3d 1054 (11th Cir. 2010).

Here, the Plaintiff has challenged both the validity of his continued incarceration awaiting trial, as well as the duration based on the inability to obtain a release through posting secured bail.  (*See* Compl.)  Therefore, the core of the injunction request would necessitate the *immediate* release of the members of the putative class, without addressing an issue of due process such as an individualized hearing to determine indigency.  Plaintiff is mandated to seek relief through § 2254, and not through a civil action under § 1983.

To further complicate matters, as a writ of habeas corpus is the only option available, Plaintiff has failed to provide any evidence or facts demonstrating compliance with § 2254(b)(1).  To prevail, there must be an exhaustion of all available state remedies prior to the filing of an action with the District Court.  *See*

-6-

*Preiser*, 411 U.S.  at 491-92.  Plaintiff has not shown that *any* state remedy was employed prior to the filing of his Complaint.  Thus, Plaintiff is unlikely to succeed on the merits.

> ### 2.   The Plaintiff has not shown that a municipal policy of the governing authority caused the constitutional injury.

Municipalities may only be held liable under § 1983 if "action pursuant to municipal policy of some nature caused a constitutional tort." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 729 (1989).  Only those officers of the local governing body who have final policymaking authority may subject a municipality to § 1983 liability. *City of St. Louis v. Praprotnik*, 485 U. S. 112, 123 (1988).  Whether an official has policymaking authority is a question of state law. *Id.*

In this case, Plaintiff has not provided any evidence of the offending municipal policy.  Plaintiff's Brief discusses "Calhoun's post-arrest detention scheme of secured bail," but he does not provide any evidence regarding votes in the minutes, transcripts of meetings in Council chambers, or even a manual or document stating a policy approved by the mayor and council members.  (*See* Compl.)  While the City of Calhoun operates a municipal court as created by the enactment of local legislation, the court is a separate judicial branch serving exclusively as the initial court of inquiry provided by O.C.G.A. §§ 36-32-1, *et seq*. and §§ 40-13-20 *et seq*.  As the governing body, the only power that can be

wielded by Calhoun's Mayor and Council regarding the court administration is the appointment or termination of the judge.[1]

It is the established law of the State of Georgia that the judge alone has sole discretion to address the issue of bail. *See Reid v. Perkerson*, 207 Ga. 27, 29 (1950) (the amount of bail assessed in criminal case left to sound legal discretion of trial court, and absence of flagrant abused of discretionary power his/her action not controlled); *see also Jones v. Grimes*, 219 Ga. 585 (1964); *Pullin v. Dorsey*, 271 Ga. 882 (2000).  Under O.C.G.A. § 17-6-1(f), only the Municipal Court Judge can establish a bail schedule, and, as such, Calhoun's Mayor and Council have very little ability to effect change as to the alleged "policy" that Plaintiff complains about.

### 3. **Pugh** *does not hold that secured bail schedules are unconstitutional.*

Plaintiff relies heavily on *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978), in support of his contention that imprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible.  (*See* Pl.'s Br.) While this language may be found in the opinion, the court actually refused to invalidate a Florida pretrial bail system as facially unconstitutional. *Id.* at 1059.

---

[1] (*See* Charter of the City of Calhoun, Georgia, Article VI, § 6-102 (Ex. 6).)

The court noted that a secured bail schedule "provides speedy and convenient release for those who have no difficulty in meeting its requirements." *Id*. at 1057. And rather than focus only on the issue of equal protection, the former Fifth Circuit noted that "[s]ince the function of bail is limited, the fixing of bail for any individual defendant must be based upon the standards relevant to the purpose of assuring the presence of that defendant." *Id*. at 1057.

Instead, *Pugh* demonstrates that Plaintiff does not possess a substantial likelihood of success on the merits because required constitutional protections are already provided by state law. While O.C.G.A. § 17-6-1(f)(1) allows the municipal court judicial officer to "establish a schedule of bails" allowing for "a person charged with committing any offense shall be released from custody upon posting bail as fixed in the schedule," this does not mean that the members of the putative class are without further remedy.  Almost as if reading from *Pugh*, state law provides for an individualized bail determination *in addition to* the secure bail schedule.  The "standards relevant to the purpose of assuring the presence of that defendant" are contained within the text of O.C.G.A. § 17-6-1(e).  In *Ayala v. State*, 262 Ga. 704 (1993), the Supreme Court of Georgia stated:

> "The trial court may release a person on bail if the court finds the person:
>
> > (1)    Poses no significant risk of fleeing from the jurisdiction

of the Court or failing to appear in court when required;

(2)    Poses no significant threat or danger to any person, to the community, or to any property in the community;

(3)    Poses no significant rise of committing any felony pending trial; and

(4)    Poses no significant risk of intimidating witnesses or otherwise obstructing the administration of justice."

*Id.* at 705.

This follows the edict in *Pugh* requiring that "'all relevant factors' be considered in determining 'what form of release is necessary to assure the defendant's appearance.'" *Pugh*, 572 F.2d at 1058.  *Pugh* does not preclude the use of monetary bail for sufficient security to ensure that the accuse return for trial.  As noted by the majority, "[i]f same 'is required' to accomplish that result, the rule provided that the judge will determine the amount of the monetary bail." *Id.*

The reliance on the Supreme Court's opinion in *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L. Ed.2d 221 (1983), is fraught with negating the substantial likelihood of success for the putative class on the merits.  The issue in *Bearden* centered on constitutional violations caused for the indigent when revoking criminal felony probation for nonpayment of fines and restitution. Writing for the Court, Justice O'Connor noted that equal protection and due process concepts converge based upon the history of the opinions involving

-10-

indigent individuals that are incarcerated.  *Id.* at 664-65.  While the Court had traditionally sought "equal justice" by striking down provisions that prohibited relief based upon financial ability, there are "also recognized limits on the principle of protecting indigents in the criminal justice system." *Id.* at 664.  *Bearden* then provides a method to determine application of which theory to apply: "we generally analyze the fairness of relations between the criminal defendant and the State under the Due Process Clause, while we approach the question of whether the State has substantial benefit available to another class of defendants under the Equal Protection Clause." *Id.* at 665.

While there might be constitutional impediments, the indigent probationer does not automatically escape his responsibility to the State, but instead:

> We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay.  If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment.

*Id.* at 672.

In the underlying case, Plaintiff should not be relieved from the requirement

of having to attempt to make bail merely upon a bare claim of indigent status.[2] First, there is a distinction between being indigent and merely being without the immediate means to provide a secured bail.  Instead, the Standing Bail Order provides a process for the Municipal Court to determine whether the accused claiming to be indigent has made "bona fide efforts to acquire the resources" to obtain pretrial release.  The proposed "alternatives" from the Plaintiff instead seeks to have all released with and "I.O.U." bond that is not authorized by the Georgia General Assembly or Title 17 of the Official Code of Georgia Annotated.  With the provisions and due process protections included in the new Standing Bail Order, Plaintiff and the putative class are provided the requisite constitutional protections to ensure they do not remain unlawfully detained.

The Standing Bail Order provides sufficient constitutional safeguards and complies with Georgia law.  Therefore, Plaintiff is unlikely to succeed on the merits and this Court should deny his Motion for Preliminary Injunction.

### C.    Plaintiff has not shown that he or other putative class members are likely to suffer irreparable harm.

Plaintiff has not met his burden to show that he or other putative class members are likely to suffer irreparable harm before a decision on the merits can

---

[2] Indeed, Plaintiff does not even claim that he told anyone that he was indigent. (*See* Pl.'s Aff.)

be rendered.  Specifically, Plaintiff has failed to put forth any evidence[3] to show that there is a likelihood of any irreparable harm to any potential class members. The Supreme Court has stated:   "[o]ur frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction."  *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 375 (2008) (emphasis in original).   Further, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Id.*

Here, Plaintiff has failed to make any such showing.  (*See* Pl.'s Br.)  While Plaintiff has provided one or two paragraphs or two about Calhoun's alleged procedures, he fails to provide any evidence to support his bare conclusions such as:  (1) "[e]ach Monday, when the City holds court, there are commonly four to six arrestees appearing for initial appearances after having been unable to purchase their freedom,"  (Pl.'s Br. at 4); (2) "[i]n contrast to Calhoun, *many* other cities and counties in Georgia and throughout the country do not hold people in jail on minor offenses because of their poverty,"  (*id.* (emphasis added)); (3) "[i]nstead, for

---

[3]  Plaintiff has only conclusorily alleged—without any supporting evidence by affidavit or otherwise—his "Statement of Facts" and any alleged harm is speculative at best.  (*See* Pl.'s Br. at 3-5, 24.)

example, *many* other places release arrestees with a signature bond or on their own recognizance," (*id.* at 4-5 (emphasis added)); and (4) "[i]n *some* places, each of these options is accompanied by the person's agreement to other reasonable conditions of release," (*id.* (emphasis added)).

Conspicuously absent from the entire section of the "Statement of Facts" regarding the City's "Bail Policies" is a single citation of supporting evidence or authority. (*See id.* at 3-5.) Furthermore, Plaintiff fails to provide a single citation—save for a general report of jail statistics—to support his argument of irreparable harm occurring to prisoners in jail. (*See id.* at 24.) Even if these statistics were authoritative, Plaintiff has failed to show the effects of how a short time in jail would lead to any of the parade of horribles that Plaintiff proposes. (*See id.* at 23-24.) Without any evidence, Plaintiff generalizes the conditions of all jails and appears to apply those to the Gordon County Jail. (*See* Pl.'s Br. at 23 n.13 ("[e]ach jailing also carries with it numerous other indignities for each class member, including intrusive body searches and cramped, crowded, and *unsanitary* living conditions." (emphasis added).)[4] Therefore, Plaintiff has failed to show the

---

[4] These are serious allegations. If Plaintiff—or Equal Justice Under Law—has evidence of those occurring at the Gordon County Jail, then Plaintiff should be required to put forth such evidence or withdraw such accusations. Moreover, the City of Calhoun has a significant interest in learning of said evidence since it contracts with Gordon County to provide jail services.

likelihood of any irreparable harm.  And since "*proof* of irreparable injury is an indispensable prerequisite to a preliminary injunction," *Siegel*, 234 F.3d at 1179 (emphasis added), this Court should therefore deny his Motion for Preliminary Injunction.

To the extent that Plaintiff relies on the position that an alleged constitutional violation constitutes irreparable harm (*see* Pl.'s Br. at 22-24), that argument would also fail because the Eleventh Circuit has previously rejected it. In *Siegel v. LePore*, the Eleventh Circuit addressed the presumption argument: "Plaintiffs also contend that a violation of constitutional rights always constitutes irreparable harm.  Our case law has not gone that far, however." *Siegel*, 234 F.3d at 1177.  Moreover, the Eleventh Circuit has stated that "[n]o authority from the Supreme Court or the Eleventh Circuit has been cited to us for the proposition that the irreparable injury needed for a preliminary injunction can properly be presumed from a substantially likely equal protection violation." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990).

### D.   Plaintiff cannot establish that the threatened injury outweighs the harm the temporary restraining order would inflict to the City of Calhoun.

Plaintiff has failed to meet his burden to establish that the harm threatened to

-15-

him outweighs the harm a preliminary injunction may cause to the City. *See MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1240 (11th Cir. 2005) (finding balance of the harms tipped in favor of the defendants). Plaintiff argues conclusorily that keeping arrestees in jail because of their poverty has "significant negative consequences for the public interest." (*See* Pl.'s Br. at 26.) Plaintiff relies upon three "terrible consequences" in support of his argument: (1) it is enormously expensive to house people in jail; (2) jailing the poor can devastate lives by disrupting employment and child-custody arrangements; and (3) even "72 hours in jail after an arrest leads to worse outcomes for all involved by increasing poverty, hurting an arrestee's family, and making it more likely than an arrestee will recidivate." (*Id.* at 27.)

But Plaintiff again fails to provide a single authoritative citation in support his argument. (*See id.*) While Plaintiff has cited academic studies concerning jail statistics sponsored by organizations with their own agendas, Plaintiff has failed to show how a short incarceration in the Gordon County Jail would lead to any of the "terrible consequences" alleged. (*See id.* at 24-28.) For example, Plaintiff conclusorily states that the "overwhelming consensus of experts is that the City will be safer by ceasing needlessly to detain the poor." (*Id.* at 26.) Not only does Plaintiff offer no binding authority in support of this assertion, Plaintiff also

-16-

grossly mischaracterizes the factual scenario set forth.  The City of Calhoun is not detaining individuals solely due to their economic status.  The offenses for which individuals are detained are not petty, trivial offenses.  *See e.g.* O.C.G.A. § 16-8-14(b)(1) (theft); O.C.G.A. § 40-6-391 (operating a vehicle under the influence).  The individuals arrested pose a risk or danger to the community and, in some instances, themselves—like Plaintiff who was arrested while walking down a busy highway at night while intoxicated.  (*See* Everett Aff.)

In this instance, the threatened injury complained of by Plaintiff is moot.  Under the current Standing Bail Order, any party, defendant, accused, or other person required or permitted by law to give or post bail as a surety or security in a criminal matter may discharge this requirement by depositing cash in the amount of said bail pursuant to the bail schedule adopted by the Court, providing his/her driver's license as collateral for any bail as provided for by O.C.G.A. § 17-6-2, or by property or surety.  (Standing Bail Order at 3-4.)

Given the Standing Bail Order, the alleged injuries and "terrible consequences" Plaintiff complains of are moot and there is no longer a live controversy for this Court to consider.  Under Article III of the United States Constitution, courts may adjudicate "only actual, ongoing cases or controversies." *Brooks v. Ga. State Bd. of Elections*, 59 F.3d 1114, 1118 (11th Cir. 1995).  "It has

long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'"  *Id.* at 1118.  A case must be viable at all stages of the litigation; it is not sufficient that the controversy was live at inception.  *Id.* at 1119; *Pugh v. Rainwater*, 572 F.2d 1053, 1059 (5th Cir. 1978) (holding that attack on bail procedures at time of trial had become moot due to adoption of new rule of criminal procedure and appropriate procedure was to vacate the bail count of the complaint).

Because the alleged "policy" which caused Plaintiff's injuries is no longer applicable, it is not capable of repetition or causing any alleged injury in the future. *Brooks*, 59 F.3d at 1120.  Thus, there can be no reasonable expectation or demonstrated probability that the same alleged controversy will recur.  *Id.* Moreover, because injunctive relief is "a prospective remedy, intended to prevent future injuries," there is no basis for this Court to grant Plaintiff's request for injunctive relief.  *Ludy v. Nelson*, 5:14-cv-73(MTT), 2015 WL 1347219, *6 (M.D. Ga. Mar. 25, 2015) (citing *Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007) (abrogated on other grounds.)

On the other hand, the harm that Defendant faces in the event the Court grants Plaintiff's Motion is substantial.  Because Plaintiff is seeking to create by

-18-

judicial application a system of unsecured bail bonds, it would create administrative and procedural havoc for the City of Calhoun, the City's Police Department, and the Municipal Court and its staff, whose infrastructure and financial resources are not equipped to handle such fallout. The expected reality, which Plaintiff fails to take into account, is an endless cycle of arrests on bench warrants, incarceration, and re-release for inability to pay. The practical application could potentially cripple the Municipal Court of the City of Calhoun.

For the reasons set forth above, any threatened or alleged injury to Plaintiff is moot, or at best, minimal, and does not outweigh the harm that would be caused by ordering injunctive relief that would substantially undermine the ability of the Municipal Court and the Police Department of the City of Calhoun to enforce the laws of the State of Georgia. *See Pugh*, 572 F.2d at 1059; *see J.A. ex rel. Swain v. Talladega Bd. of Educ.*, 41 F.Supp.3d 1302, 1313 (N.D. Ala. 2014) (injunctive relief would substantially undermine the Board of Education's decision-making process and authority to discipline students) (citing *Enterprise v. City Bd. of Educ. v. C.P.*, 698 So.2d 131, 133 (Ala. Civ. App. 1996) ("the trial court's judgment reversing the decision of the school board sends a signal that the board's policy and state law will not be strictly enforced.")). Plaintiff has therefore, failed to meet his burden as to the third factor.

-19-

### E.     Plaintiff fails to show that the grant of injunctive relief would not be adverse to the public interest.

For many of the same reasons discussed above, Plaintiff similarly fails to satisfy the final factor.   Because the requested injunction by Plaintiff is in contravention to O.C.G.A. § 17-6-1(f)(1), the public interest would be hindered by such an order, rather than supported by it.   *See J.A. ex rel. Swain*, 41 F.Supp.3d at 1313 (the public interest of "ensuring that schools are made safe and drug-free for all students and school employees" as defined by the Alabama legislature would be hindered by such an order); *Bearden v. Georgia*, 461 U.S. 660, 669(1983) (state has a fundamental interest in appropriately punishing persons – rich and poor – who violate its criminal laws and a defendant's poverty in no way immunizes him from punishment).   Plaintiff woefully neglects to consider the practical effects of implementing a system of unsecured bonds and the adverse impact upon the City of Calhoun and its citizens.

### F.     Plaintiff should be required to post injunction security.

Federal Rule of Civil Procedure 65(c) provides that a court may issue a preliminary injunction only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined.   FED. R. CIV. P. 65(c).

It should not be necessary to point out that Rule 65(c), like all statutes

> and rules, is to be given the plain meaning imparted by its clear and
> unequivocal language.   The language of Rule 65(c) is clear and
> unequivocal.   The purpose and meaning of Rule 65(c) is readily
> discernable from its language.  The court can detect no ambiguity.  No
> legislative history is needed to know that the drafters of Rule 65(c)
> intended to protect the subjects of an ultimately found-to-be erroneous
> preliminary injunction from the damages they have sustained.   In
> other words, if a preliminary injunction is issued in error, defendants
> are entitled to the security against loss afforded by the Rule 65(c)
> bond.

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 297 F.R.D. 633,

635 (N.D. Ala. 2014.)    Federal Rule of Civil Procedure 65(c) calls upon the court

to fix a bond amount in what it considers to be the amount necessary to pay the

costs and damages sustained by parties found to have been wrongfully enjoined.

*Id.* at 636.

There is "not a hint of suggestion in the language of Rule 65(c)" that a bond

can be set at a nominal amount or that the bond can be waived entirely in cases

where the damages that may be sustained would be enormous, and/or where the

plaintiffs are financially incapable of posting a fair and realistic bond.  *Id.*  "To

deny a bond would not only be abusing the court's discretion, it would be

flagrantly disregarding a binding rule."  *Id.*; *Hoechst Diafoil Co. v. Nan Ya Plastics*

*Corp.*, 174 F.3d 411, 421 (4th Cir. 1999) (court is not free to disregard bond

requirement altogether and failure to require a bond upon issuing injunctive relief

is reversible error); *Sys. Operations Inc. v. Scientific Games Dev. Corp.*, 555 F.2d

1131 (3d Cir. 1977) (failure to require the posting of a bond is reversible error).

As the Supreme Court has stated, "[a] party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Corp. Linoleum & Plastic Workers*, 461 U.S. 757, 770 n.14(1983). Furthermore, the bond serves to inform the plaintiff of the price he can expect to pay if the injunction was wrongfully issued. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 885 F.2d 797, 804-05 (3d Cir. 1989).

Plaintiff argues only in the highly-limited vacuum that the City will not incur any financial harm because it may "issue the same bond to Mr. Walker or other arrestees and charge the same amount of money should they fail to appear in court." (*See* Pl.'s Br. at 29-30.)  Contrary to Plaintiff's assertion, in the event that an injunction is improperly issued, the City will suffer substantial financial harm when required to implement a system of unsecured bonds.  The City will be required to expend funds in sum not yet known to comply with the injunction (if entered by the Court).  As discussed *supra*, the City, the Police Department and the Municipal Court will face an endless cycle of arrests on bench warrants, incarceration, and re-release for inability to pay, which will not only flood the infrastructure, but also dramatically increase the City's overhead both for

-22-

personnel and costs.

Plaintiff also contends that he and the other putative class members should not be required to post a bond based upon their indigency.  (Pl.'s Br. at 30.) "[E]ven where the plaintiffs are indigent, a careful weighing of the equities is still required before the bond requirement can be waived."  *Heather K. by Anita K. v. City of Mallard, Iowa*, 887 F.Supp. 1249, 1268 (N.D. Iowa 1995); *Alexandra v. Primerica Holdings, Inc.*, 811 F.Supp. 1025, 1037 (D.N.J. 1993) (indigency alone is not a sufficient ground for waiving the bond requirement in granting a preliminary injunction) (referencing *Recovery for Wrongful Interlocutory Injunctions Under Rule 65(c)*, 99 HARV. L. REV. 828, 833 (1986)).

Even if Plaintiff and the other putative class members are indigent as claimed, the driving force behind this litigation, and numerous other similarly-filed lawsuits around the country, Equal Justice Under Law, is not indigent.  Courts have recognized that nonprofit entities, including those devoted to "public goods of great social value" should not be exempted from having to post injunction bonds finding that argument "flies in the face" of Rule 56(c).  *Habitat Educ. Ctr. v. U.S. Forest Servc.*, 607 F.3d 453, 457 (7th Cir. 2010); *see Black Warrior Riverkeeper, Inc.*, 297 F.R.D. at 634.  Further, as discussed *supra*, Plaintiff is not likely to succeed on the merits and therefore, a bond is warranted.

52202.1

In light of the substantial harm that the City of Calhoun faces if it is improperly enjoined, this Court should exercise require Plaintiff to post sufficient security pursuant to Rule 65(c).

### G.    Plaintiff has challenged the constitutionality of a statute.

In this case, Plaintiff has directly challenged the use of a bail schedule.  (*See* Compl. ¶¶ 44, Prayer for Relief ¶ b.)  But Georgia law specifically endorses the use of bail schedules.  O.C.G.A. § 17-6-1(f)(1).  Thus, for Plaintiff to actually win his challenge to the City's use of a bail schedule, Plaintiff, in reality, will have to ask this Court to find O.C.G.A. § 17-6-1(f)(1) to be unconstitutional.  But Plaintiff has neither added the State of Georgia as a party to this action nor has he, to the City's knowledge, provided notice to the Attorney General of the State of Georgia.

28 U.S.C.A. Section 2403(b) provides that notice should be provided to Georgia's Attorney General:

> In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality.  The State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

-24-

28 U.S.C.A. § 2403(b); *see also* O.C.G.A. § 9-4-7(c) (providing the state procedure of notice to the Attorney General when challenging the constitutionality of a statute).  This case satisfies the requirement of a "statute of [Georgia] affecting the public interest" (*id.*),  because bail schedules are approved to be used statewide. *See* O.C.G.A. § 17-6-1(f)(1).  Moreover O.C.G.A. Section 17-6-1(f)(1) applies not only to Municipal Courts, but also to all "court[s] of inquiry," which necessarily include Magistrate Courts, State Courts, and Superior Courts.  *See id.*  But even if this Court were to find that this case did not satisfy the requirement of a statute affecting the "public interest," Georgia's Attorney General should be provided notice and invited to intervene in this case under the authority of *Strickland v. Alexander*, 772 F.3d 876, 889 (11th Cir. 2014).

## IV.   CONCLUSION.

Because Plaintiff cannot establish a substantial likelihood of success on the merits nor can he satisfy the remaining factors necessary to meet the exceedingly high burden to obtain a preliminary injunction.  Given the substantial harm Defendant faces if an injunction is granted, Plaintiff should be required to post a security bond.  Accordingly, the City respectfully requests that this Court deny Plaintiff's Motion for a Preliminary Injunction.

Respectfully submitted this 2nd day of December, 2015.

**BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS, LLP**

P.O. Box 5007
Rome, Georgia  30162-5007
Phone:  (706) 291-8853
Fax:  (706) 234-3574
adavis@brinson-askew.com
fbeacham@brinson-askew.com
slucas@brinson-askew.com

/s/ J. Anderson Davis
J. ANDERSON DAVIS
Georgia Bar No. 211077
A. FRANKLIN BEACHAM III
Georgia Bar No. 043743
SAMUEL L. LUCAS
Georgia Bar No. 142305

*Attorneys for Defendant City of Calhoun, Georgia*

**CARLOCK, COPELAND & STAIR, LLP**

/s/ David F. Root
DAVID F. ROOT
Georgia Bar No. 614125
ABBY C. GROZINE
Georgia Bar No. 542723

*Attorneys for Defendant City of Calhoun, Georgia*

Carlock, Copeland & Stair, LLP
One Ninety One Peachtree Tower
191 Peachtree Street, N.E.
Suite 3600
Atlanta, Georgia 30303
(404) 522-8220
Fax (404) 523-2345
P. O. Box 56887
Atlanta, Georgia 30343-0887
droot@carlockcopeland.com
agrozine@carlockcopeland.com

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have this day filed the within and foregoing **Defendant City of Calhoun's Response in Opposition to Plaintiff's Motion for Preliminary Injunction** and with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to the following parties at interest:

    Alec Karakatsanis
    Ryan Primerano
    Sarah E. Geraghty
    *Attorneys for Plaintiff*

This 2nd day of December, 2015.

                By:   /s/ *Abby C. Grozine*
                     ABBY C. GROZINE
                     Georgia Bar No. 542723

5327886v.1
52202.1