IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

MAURICE WALKER, on
behalf of himself and others
similarly situated,

     Plaintiff,

v.

                         CIVIL ACTION FILE NO.:
                         4:15-CV-0170-HLM

CITY OF CALHOUN, GEORGIA,

     Defendant.

## ORDER

This case is before the Court on Plaintiff's Motion for

Preliminary Injunction [4].

# I.   Background

## A.   Plaintiff's Allegations

Plaintiff has sued Defendant, alleging that Defendant jails "the poor because they cannot pay a small amount of money." (Compl. (Docket Entry No. 1) ¶ 1.) Plaintiff is a recent arrestee who is imprisoned because he cannot afford to pay the money set by Defendant's bail schedule. (Id. ¶ 2.) Plaintiff alleges that Defendant releases "many people arrested for minor traffic or misdemeanor offenses . . . almost immediately upon payment of money." (Id.) However, those "who are too poor to purchase their release remain in jail because of their poverty for up to seven days before a first court appearance." (Id.) Plaintiff "challenges in this action the use of fixed amounts of secured money

2

bail that results in the detention of only the poorest of those arrested for petty offenses," and "seeks a declaration that [Defendant's] conduct is unlawful, and injunctive relief assuring that his rights and the rights of the other class members will not continue to be violated." (Id. ¶ 3.)

Plaintiff alleges that Defendant has a policy and practice of refusing "to release traffic and misdemeanor arrestees from jail unless they pay a generically set bond amount," which varies by offense but usually ranges from $90 to $1,000. (Compl. ¶ 4.) According to Plaintiff, Defendant does not consider individualized factors when setting bonds, and "anyone who cannot afford to pay is held in jail for up to seven days before [Defendant] brings its arrestees before the municipal court." (Id.)

3

Defendant is a Georgia municipal corporation and is the seat of Gordon County, Georgia. (Compl. ¶ 9.) Defendant operates the Calhoun Police Department (the "CPD") and contracts with the sheriff of Gordon County to hold its arrestees in the Gordon County Jail (the "Jail"). (Id.)

Plaintiff is fifty-four years old and has a serious mental disorder that causes him to be disabled. (Compl. ¶ 10.) Plaintiff alleges that his only income consists of $530 per month in Social Security disability payments, which his sister receives and manages. (Id.) Plaintiff lives with his sister and has no property or assets. (Id.) Plaintiff has been unable to work for the past five years. (Id.)

On September 3, 2015, the CPD arrested Plaintiff and charged him with being a pedestrian under the influence.

4

(Compl. ¶ 11.)  CPD officers brought Plaintiff to the Jail, where he was booked and placed in a holding cell.  (Id. ¶ 12.)  An officer told Plaintiff "that he would not be released unless he paid the standard $160 cash bond that [Defendant] requires for people charged with being a pedestrian under the influence."  (Id.)

Plaintiff is indigent and cannot afford to post the bond. (Compl. ¶ 13.)  Plaintiff's family cannot afford to post the bond.  (Id.)  Plaintiff has asked officers at the Jail when he will go to court, and has received three different answers. (Id. ¶ 14.)   Defendant holds weekly court sessions on Mondays, and new arrestees who cannot post bond must wait until the following Monday to see the judge.   (Id.) Defendant did not hold court on September 7, 2015, due to

5

the Labor Day holiday, and Plaintiff will not appear in court until September 14, 2015.  (Id.)

Plaintiff has a prescription for medication for his mental disorder and must take the medication every day.  (Compl. ¶ 15.)  In August 2015, Plaintiff spent eight days in the hospital because he had stopped taking his medication. (Id.)  Plaintiff alleges that he has not received his medication while in the Jail, that he is assigned to a single-person cell, and that he is allowed out of the cell for one hour each day.  (Id.)

Plaintiff alleges that, under Georgia law, most arrestees who are charged with misdemeanors are entitled to pretrial release.  (Compl. ¶ 16.)  Plaintiff contends that Defendant would release him immediately if he or a family member

6

paid the bond amount.  (Id. ¶ 17.)  According to Plaintiff, his treatment, and that of other class members, results from and is representative of Defendant's post-arrest detention policies and practices.  (Id. ¶ 18.)  Plaintiff alleges that under Defendant's policy and practice,

> when the [CPD] makes an arrest for a minor traffic or misdemeanor offense, officers inform the arrestee that the arrestee will be released immediately if he or she pays the bond amount set for each charge of arrest pursuant to an offense-based and pre-set bail schedule.  The arrestee is told that he or she will remain in jail if unable to make that payment.

(Id. ¶ 19 (footnote omitted).)  According to Plaintiff, those who remain in Defendant's custody typically cannot afford to pay a third-party bonding agent the ten to twenty percent required to obtain a commercial bail bond.  (Id. at 6 n.2.)  Plaintiff states that he cannot afford such a bond.  (Id.)

7

AO 72A
(Rev.8/8
2)

According to Plaintiff, "[b]ecause [Defendant] does not deviate from secured money bail and holds court only once per week, any arrestee too poor to pay the pre-set secured bail could spend as many as seven days in jail prior to a first court appearance." (Compl. ¶ 20.) Plaintiff alleges that Defendant, unlike many other cities, "does not allow post-arrest release on recognizance or with an unsecured bond (in which a person would be released by promising to pay the scheduled amount if the person later does not appear)." (Id. ¶ 21.) Defendant instead requires payment up front. (Id.)

Plaintiff alleges:

After arrest, [J]ail employees inform arrestees of the secured bond amount based on their training and [Defendant] policies. Many of [Defendant's] minor misdemeanor arrestees are thus released

8

> soon after arrest upon payment of the scheduled amount of cash.   Some remain detained for varying lengths of time until they or their families are able to borrow sufficient amounts of money or arrange for third-party payment.   Others, like [Plaintiff], who are too poor even to find anyone to pay the money bond for them, are kept in jail.

(Compl. ¶ 22.)  According to Plaintiff, "[e]ach Monday, there are commonly about four to six indigent defendants who were not able to pay enough money to secure their release." (Id. ¶ 23.)

Plaintiff has brought this action on behalf of a class, alleging that "[a] class action is a superior means, and the only practicable means, by which [Plaintiff] and other class members can challenge [Defendant's] unlawful detention scheme." (Compl. ¶ 25.)  Plaintiff proposes a class for declaratory and injunctive relief, defined as "[a]ll arrestees

9

unable to pay for their release who are or will be in the custody of [Defendant] as a result of an arrest involving a misdemeanor, traffic offense, or ordinance violation." (Id. ¶ 28.)  Plaintiff alleges that the class satisfies the numerosity requirement.  (Id. ¶¶ 29-31.)  Plaintiff further contends that the class satisfies the commonality requirement.  (Id. ¶¶ 32-35.) Additionally, Plaintiff alleges that the class satisfies the typicality requirement.  (Id. ¶¶ 36-37.)  Plaintiff argues that he is an adequate representative of the class, that his counsel can adequately represent the class, and that the class satisfies the adequacy requirement.  (Id. ¶¶ 38-41.) According to Plaintiff:

> Class action status is appropriate because [Defendant], through the policies, practices, and procedures that make up its post-arrest detention scheme, has acted in the same unconstitutional

10

manner with respect to all class members. [Defendant] has created and applied a simple scheme of post-arrest detention and release: it charges standard secured money amounts for every misdemeanor or ordinance-violation arrestee. [Defendant] releases those who can pay and detains those who cannot. The detained arrestees are eventually taken to court the following week for a first appearance, up to seven days after arrest.

(Id. ¶ 42.)

Plaintiff alleges that Defendant violated his Fourteenth Amendment rights by jailing him because he cannot afford to pay the cash bond. (Compl. ¶¶ 46-47.) Plaintiff seeks a declaratory judgment that Defendant violated his rights, and those of the class members, "by jailing them because of their inability to pay a generically set amount of money to secure release after an arrest" (id. at 13), as well as an Order preliminarily and permanently enjoining Defendant

11

from enforcing its post-arrest money-based detention policies against Plaintiff and the class (id. at 13-14), monetary damages (id. at 14), and attorneys' fees and costs (id.).

## B.   Plaintiff's Declaration

Plaintiff submitted a Declaration. (Compl. Ex. A (Docket Entry No. 1-2).) Plaintiff states that he is fifty-four years old. (Id. ¶ 1.) Plaintiff further states that he was arrested on September 3, 2015, by the CPD on charges of pedestrian under the influence. (Id. ¶ 2.) When Plaintiff arrived at the Jail, he was told that he had to pay a $160 cash bond or he would be kept in jail. (Id. ¶ 3.) According to Plaintiff, he has a major mental health disorder and is disabled, and his only income is $530 per month in Social

12

Security benefits, which his sister receives. (Id. ¶ 4.) Plaintiff has not worked in five years, does not have a driver's license, owns no property, and lives with his sister. (Id.) Plaintiff states that he does not know when his court date will be, as he has received three different answers from guards, and notes that he cannot afford to buy his release. (Id. ¶ 5.)

## C.  Defendant's Materials

### 1.  Affidavit of Samuel Heath Everett

Mr. Everett is a police officer with the City of Calhoun, Georgia's Police Department (the "CPD"). (Aff. of Samuel Heath Everett (Docket Entry No. 29-1) ¶ 1.) On September 3, 2015, Mr. Everett was dispatched to the area of Experiment Station Road and Georgia State Route 53 Spur

13

to respond to a report of a black male walking in the roadway who appeared to be intoxicated.  (Id. ¶ 2.)  After reaching that location, Mr. Everett located an individual who matched the description provided, and noted that the individual appeared to be stumbling as he was walking.  (Id. ¶ 3.)  As Mr. Everett approached the individual, he smelled a strong odor of alcohol.  (Id. ¶ 4.)  The individual identified himself as Plaintiff.  (Id.)  Mr. Everett also observed that Plaintiff had slurred speech and red, glassy eyes, which are consistent with intoxication.  (Id. ¶ 5.)  Mr. Everett arrested Plaintiff and transported him to the Jail, where he was booked and cited for a violation of O.C.G.A. § 40-6-95.  (Id. ¶ 6.)  Mr. Everett told Plaintiff "that he would need to make contact with someone who could then call the [CPD]

regarding the process for making bail."  (Id. ¶ 7.)  Mr. Everett did not "advise [Plaintiff] with regard to the amount necessary for bail."  (Id.)

### 2.   Prisoner Release Authorization

Defendant presented a copy of a prisoner release authorization indicating that Plaintiff was directed to be released from the Jail on September 9, 2015.  (Prisoner Release Authorization (Docket Entry No. 29-2).)

### 3.   Ticket Information Sheet

The ticket information sheet from Plaintiff's arrest indicates that, on September 3, 2015, Plaintiff was charged with being a pedestrian under the influence, in violation of O.C.G.A. § 40-6-95.  (Ticket Information Sheet (Docket Entry No. 29-3).)  The ticket information sheet also reflects

15

AO 72A
(Rev.8/8
2)

that Plaintiff paid a fine in the amount of $160.00, which was forfeited on October 19, 2015.  (Id.)

### 4.  Affidavit of Matthew Chad Silvers

Defendant presented the Affidavit of Matthew Chad Silvers, who is employed by the Municipal Court of the City of Calhoun, Georgia as a deputy clerk and as a deputy marshal.  (Aff. of Matthew Chad Silvers (Docket Entry No. 29-4) ¶ 1.)  Mr. Silvers states that the Calhoun Municipal Court "allows individuals to post a bond secured by electronic payment for most offenses through an online service provided by Government Window, LLC."  (Id. ¶ 2.) According to Mr. Silvers, the records provided by the online services indicate that, on October 10, 2015, a $160.00 bond was posted for a ticket belonging to Plaintiff, who was

16

scheduled to appear before the Calhoun Municipal Court on October 12, 2015.  (Id. ¶ 3.)

## 5.    Standing Order

Defendant also presented a copy of the Calhoun Municipal Court's Standing Order Regarding Pre-Trial Appearance, Establishment of Bonds in Advance of Initial Appearance Pursuant to State Law and Individualized Indigency Determinations (the "Standing Order"). (Standing Order (Docket Entry No. 29-5).)  The Standing Order states, in relevant part:

> Pursuant to O.C.G.A. § 17-6-1(f)(1), the Court for the City of Calhoun, Georgia, as a court of inquiry with original jurisdiction acting in the stead of the Superior Court of Gordon County, Georgia, for certain offenses hereby re-adopts and re-affirms the written and established bail schedule attached as Exhibit "A."   The provisions of said

17

exhibit are hereby incorporated by reference by this standing order as if fully set forth herein.

Any party, defendant, accused, or other person required or permitted by law to give or post bail as surety or security in a criminal matter may discharge this requirement by depositing cash in the amount of said bail.  O.C.G.A. § 17-6-4(a). Additionally, an accused may provide his/her driver's license as collateral for any bail as provided for by O.C.G.A. § 17-6-2.

The purpose is to permit the posting of bail without a delay associated with the "First Appearance" within 48 hours of being confined to the Gordon County Jail, as mandated by Georgia Uniform Superior Court Rule 26.1.  It is the opinion of the Court that the employ of such a schedule, as authorized by state law, "provides speedy and convenient release for those who have no difficulty in meeting its requirements[.]" *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978).

(Id. at 3.)  The schedule "shall apply to all custodial arrests permitted by O.C.G.A. §§ 17-4-20 and 17-4-23, or other applicable code provisions" for various offenses.  (Id. at 4.)

18

The Standing Order also contains a provision concerning scheduling a First Appearance for individuals who are not capable of making bail under the bail schedule, which states:

> For those individuals who do not obtain release pursuant to the secured bail schedule as outlined above, within forty-eight (48) hours from their arrest, they shall then be brought before the Court for a "first appearance" in accordance with Georgia Uniform Superior Court Rule 26.1. In additional [sic] to those obligations established by the Uniform Rule, the accused shall be represented by court appointed counsel. At this time the accused will be given the opportunity to object to the bail amount set for him or her, including any claim of indigency and the need for appointed legal counsel to assist in their release. The Court shall then determine whether the accused is unable to post a secured bail because he/she is indigent, making an individualized determination based upon the evidence provided.
>
> The standard for making an individualized determination of indigency shall be that

established by O.C.G.A. § 36-32-1(f) and (g), as defined by O.C.G.A. § 17-2-2(6)(A) regarding an "indigent person" charged with a misdemeanor, violation of probation, or a municipal code offense punishable by imprisonment.   These legislative provisions have established an "indigent person" or "indigent defendant" for appointed legal counsel as one "earning less than 100 percent of the federal poverty guidelines, unless there is evidence that the person has other resources that might be reasonably used to employ a lawyer without undue hardship on the person or his or her dependents[.]"   For purposes of this order, "100 percent of the federal poverty guidelines" shall specifically mean the guidelines published in the Federal Register of January 22, 2015, Volume 80, Number 14 on ppgs 3237, 3238 (a copy of same being attached as Exhibit "B" hereto), and as may be further promulgated and adopted for subsequent years in the Federal Register.

Should the Court find, based upon the evidence then provided that the accused is indigent by said standard, then he/she shall be subject to release on recognizance without making a secured bail in accordance with O.C.G.A. § 17-6-1(i).   Said individual shall then be provided written notice of the date for the next proceeding

20

> or trial. It shall be the responsibility of the accused to notify the Clerk of Municipal Court should he/she have a change of residence or mailing address prior to a[n] adjudication and sentencing to ensure notice of any change in the scheduled proceedings.
>
> In the unlikely event that no hearing can be held within the forty-eight (48) hour time frame established by Georgia Uniform Superior Court Rule 26.1, then the accused shall be released on a recognizance bond in accordance with O.C.G.A. § 17-6-1(i).
>
> The staff of the Gordon County Jail shall inform the Municipal Court staff of any such accused in a timely fashion and shall additionally facilitate his/her appearance via video transmission or teleconference at a time to be set by the Court.

(Standing Order at 5-6.) Finally, the Standing Order provides:

> All persons charged with violations of The Code of Calhoun, Georgia who have no outstanding failure to appear arrest warrant from



AO 72A
(Rev.8/82)

the City of Calhoun, or any other similar governing authority duly established by the Georgia General Assembly or the Constitution of The State of Georgia, shall be released on an unsecured appearance bond in the amount established by the aforementioned bail schedule. The unsecured appearance bond form which shall be used is hereto attached as Exhibit "C," and same is incorporated as if fully set forth herein.

(Id. at 6-7.)

## 6. Defendant's City Code

Defendant also presented a copy of its City Code. (City Code (Docket Entry No. 29-6).) Article VI of Defendant's City Code governs the municipal court. (City Code Art. VI.) Section 6-101 creates the municipal court. (Id. Art. VI, Sec. 6-101.) Section 6-102 governs chief and associate judges of the municipal court. (Id., Art. VI Sec. 6-102.) Notably, the mayor and council set the compensation for the

22

AO 72A
(Rev.8/8
2)

municipal court judges, and the judges "shall be appointed by the mayor and council and shall serve at the pleasure of the mayor and council, subject to removal, with or without any stated cause, upon a majority vote by the mayor and counsel." (Id. Art. VI, Sec. 6-102(a)(1).) The City Code also sets the qualifications for municipal court judges. (Id. Art. VI, Sec. 6-102(a)(2).) Further, under the City Code, the mayor and council may fill vacancies in the office of the chief municipal judge by appointment if the vacancies occur "by reason of death, resignation, removal or other reason." (Id. Art. VI, Sec. 6-102(c).) Section 6-103 governs convening the municipal court, and provides that "[t]he court shall sit at a place designated by the mayor and council." (Id., Art. VI Sec. 6-103.) Section 6-104 sets forth the

23

municipal court's jurisdiction, which consists of "violations of city ordinances" and "[t]he prosecution of traffic offenses as set forth in O.C.G.A. Title 40," among other things.  (Id. Art. VI, Sec. 6-104.)  Section 6-105 sets forth the requirements for the municipal court's ministerial officers, their attendance, and their duties.   (Id. Art. VI, Sec. 6-105.) Section 6-106(a) provides that any person convicted in the municipal court may petition the Superior Court of Gordon County for a writ of certiorari.  (Id., Art. VI, Sec. 6-106(a).) Section 6-106(b) states:

> Nothing in this section shall prevent a defendant who desires to obtain a writ of certiorari from the judge of the Superior [C]ourt of Gordon County from doing so; provided, however, that the applicant failing to give bond and security may, in the discretion of the municipal court judge, be placed in the city prison or county jail to await the final judgment on the appeal.   Nothing in this

24

section shall be construed to prevent any person convicted in the municipal court of a violation of any city ordinance from petitioning for a writ of certiorari directly to the Superior Court in accordance with the provisions of state law in such cases.

(Id. Art. VI, Sec. 6-106(b).)

## D.   Procedural Background

On September 8, 2015, Plaintiff filed this lawsuit. (Docket Entry No. 1.)  On that same day, Plaintiff filed a Motion for TRO and Preliminary Injunction.  (Docket Entry No. 4.)   The Court denied the Motion for TRO without prejudice on September 10, 2015, following Plaintiff's release from confinement, but left the Motion for Preliminary Injunction pending.  (Order of Sept. 10, 2015 (Docket Entry No. 13).) The briefing process for the Motion for Preliminary Injunction is complete.

25

In this Circuit, "[a]n evidentiary hearing is required for entry of a preliminary injunction only where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue." Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc., 304 F.3d 1167, 1178 (11th Cir. 2002) (internal quotation marks and citations omitted); see also McDonald's Corp. v. Robertson, 147 F.3d 1301, 1313 (11th Cir. 1998) ("[W]here material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing."). The Court finds that material facts are not in dispute, and that no evidentiary hearing on the Motion for Preliminary Injunction

26

AO 72A
(Rev.8/8
2)

is necessary.  The Court therefore concludes that the matter is ripe for resolution.

## II.   Motion for Preliminary Injunction

### A.   Parties' Positions

#### 1.   Plaintiff's Initial Brief

Plaintiff argues that Defendant is ignoring "the principle that no person may be kept in jail solely because of her property" by jailing "people solely because they cannot pay a small amount of money to secure their release." (Br. Supp. Mot. Preliminary Inj. (Docket Entry No. 7) at 2.) Plaintiff contends that "[k]eeping the poor in jail because they cannot make a monetary payment violates longstanding and fundamental principles of American law," and Defendant's scheme "has been rejected by the courts

27

and by every major panel of legal experts to study the issue over the past fifty years." (<u>Id.</u>) Plaintiff argues that he has a substantial likelihood of succeeding on the merits of his claims because Defendant's conduct violates basic principles of equal protection and due process. (<u>Id.</u> at 6-7.) According to Plaintiff, Defendant's bail policy runs afoul of Circuit precedent because

> it carves out jail for those who cannot afford to pay [Defendant] and freedom for those who can.  In no case is an indigent arrestee offered an alternative to posting an immediate payment. [Defendant] has determined that people committing minor misdemeanor offenses are eligible for immediate release after arrest. [Defendant] cannot make exercising that right to freedom contingent solely on the ability to pay arbitrary amounts of cash.

(<u>Id.</u> at 13 (citations omitted).)   Plaintiff notes that state courts also have rejected money-based detention schemes.

28

(Id. at 14-15.)  Plaintiff also contends that Defendant has simple alternatives to jailing the poor.  (Id. at 15-22.)

Plaintiff further argues that he and the class will suffer irreparable harm if the Court does not issue a TRO, based on the deprivation of liberty.  (Br. Supp. Mot. Prelim. Inj. at 22-24.)  Plaintiff also notes that the public interest supports preventing a violation of constitutional rights.  (Id. at 24-25.)  According to Plaintiff, an injunction will not harm Defendant, which "already offers release to every misdemeanor arrestee–but only if they can pay for it."  (Id. at 25.)  Plaintiff notes that, if the Court issues an injunction:

> At worst, [Defendant] would be required to do what other cities and counties in Georgia and throughout the country do every day: release both rich and poor after arrest instead of requiring the poor to sit in jail only because they cannot afford to purchase their release.

29

(<u>Id.</u> at 25-26.)

Finally, Plaintiff argues that the Court should exercise its discretion not to require a bond. (Br. Supp. Mot. Prelim. Inj. at 28-31.) Plaintiff notes that Defendant has very little likelihood of suffering any harm, including financial harm, from an improperly-issued injunction. (<u>Id.</u> at 29-30.) Plaintiff further states that he and the other Class members are indigent and lack financial resources. (<u>Id.</u> at 30.) Finally, Plaintiff argues that he "is overwhelmingly likely to succeed on the merits." (<u>Id.</u> at 31.)

## 2.   Defendant's Response

30

Defendant filed a response opposing Plaintiff's Motion

for TRO.  (Resp. Mot. Prelim. Inj. (Docket Entry No. 29).)

Defendant notes that "Plaintiff does not provide any facts or

any objective standard by which to determine that he is, in

fact, 'indigent.'" (<u>Id.</u> at 4.)   Defendant first argues that

Plaintiff does not have a substantial likelihood of succeeding

on the merits.   (<u>Id.</u> at 4-12.)   Specifically, Defendant

contends that Plaintiff's suit, which challenged his continued

custody in the Jail, should have been brought as a habeas

petition under 28 U.S.C. § 2254, rather than as a § 1983

action, and that Plaintiff failed to exhaust his state remedies.

(<u>Id.</u> at 4-7.)   Defendant also argues that no offending

municipal policy caused Plaintiff's injury, as the Calhoun

Municipal Court "is a separate judicial branch serving

31

exclusively as the initial court of inquiry."  (Id. at 7.)

Defendant notes that its Mayor and Council simply may

appoint or terminate judges, but that only the judges of the

Calhoun Municipal Court may establish a bail schedule. (Id.

at 7-8.)   Thus, Defendant contends that its "Mayor and

Council have very little ability to effect change as to the

alleged 'policy' that Plaintiff complains about." (Id. at 8.)

Finally, Defendant argues that Pugh v. Rainwater, 572

F.2d 1053 (5th Cir. 1978), does not hold that secured bail

schedules are unconstitutional. (Resp. Mot. Prelim. Inj. at

8-12.)  According to Defendant, "*Pugh* demonstrates that

Plaintiff does not possess a substantial likelihood of

success on the merits because required constitutional

protections are already provided by state law," including

32

O.C.G.A. § 17-6-1, which "provides for an individualized bail determination *in addition to* the secure bail schedule." (Id. at 9 (emphasis in original).)   Defendant argues that "Plaintiff should not be relieved from the requirement of having to attempt to make bail merely upon a bare claim of indigent status." (Id. at 9-10 (footnote omitted).) According to Defendant, "the Standing Bail Order provides a process for the Municipal Court to determine whether the accused claiming to be indigent has made 'bona fide efforts to acquire the resources' to obtain pretrial release," and Plaintiff's proposed alternatives "instead seek[] to have all released with an[] 'I.O.U.' bond that is not authorized by the Georgia General Assembly or Title 17 of the Official Code of Georgia Annotated." (Id. at 12.)   Defendant contends

33

that the Standing Order provides adequate due process protections and safeguards. (Id.)

Alternatively, Defendant argues that Plaintiff cannot show that he or any class member is likely to suffer irreparable harm absent an injunction. (Resp. Mot. Prelim. Inj. at 12-15.) According to Defendant, Plaintiff put forth no evidence to support his conclusions or to show that irreparable harm will occur to prisoners in jail. (Id. at 13-15.) Defendant also notes that the Eleventh Circuit has not held that an alleged constitutional violation will always constitute irreparable harm. (Id. at 15.)

Defendant further contends that the balance of harms does not favor Plaintiff. (Resp. Pl.'s Mot. Prelim. Inj. at 15-19.)   According to Defendant, "[w]hile Plaintiff has cited

34

academic studies concerning jail statistics sponsored by organizations with their own agendas, Plaintiff has failed to show how a short incarceration in the [Jail] would lead to any of the 'terrible consequences' alleged."   (Id. at 16.) Defendant argues that it "is not detaining individuals solely due to their economic status," noting that "[t]he offenses for which individuals are detained are not petty, trivial offenses," and that "[t]he individuals arrested pose a risk or danger to the community and, in some instances, themselves." (Id. at 17.) According to Defendant, Plaintiff's threatened injury is moot in light of the Standing Order.  (Id. at 17-18.)  Defendant contends that the alleged violation "is not capable of repetition or causing any alleged injury in the future," and "there can be no reasonable expectation of a

35

demonstrated probability that the same alleged controversy will recur." (Id. at 18.) Defendant argues that, under those circumstances, "there is no basis for this Court to grant Plaintiff's requests for injunctive relief." (Id.) Defendant contends that it, in contrast, will face substantial harm if the Court grants injunctive relief, (Id. at 18-19.)

Defendant also argues that Plaintiff cannot show that an injunction would serve the public interest, noting that "[b]ecause the requested injunction by Plaintiff is in contravention to O.C.G.A. § 17-6-1(f)(1), the public interest would be hindered by such an order, rather than supported by it." (Resp. Pl.'s Mot. Prelim. Inj. at 20.) According to Defendant, "Plaintiff woefully neglects to consider the practical effects of implementing a system of unsecured

36

bonds and the adverse impact upon [Defendant] and its citizens."  (Id.)

Defendant also argues that the Court should require Plaintiff to post security for an injunction under Federal Rule of Civil Procedure 65(c).  (Resp. Pl.'s Mot. Prelim. Inj. at 20-24.) According to Defendant, "in the event that an injunction is improperly issued, [Defendant] will suffer substantial financial harm when required to implement a system of unsecured bonds," and Defendant "will be required to expend funds in sum not yet known to comply with the injunction."  (Id. at 22.)  According to Defendant, the CPD and the Calhoun Municipal Court "will face an endless cycle of arrests on bench warrants, incarceration, and re-release for inability to pay, which will not only flood the

37

infrastructure, but also dramatically increase [Defendant's] overhead both for personnel and costs."  (Id. at 22-23.) Defendant argues that the mere fact that Plaintiff and the potential class members may be indigent will not necessarily excuse them from posting a bond.  (Id. at 23.) According to Defendant, "the driving force behind this litigation, and numerous other similarly-filed lawsuits around the country, Equal Justice Under Law, is not indigent."  (Id.) Defendant also argues that a bond is warranted because Plaintiff has not shown a likelihood of succeeding on the merits.  (Id.)

Finally, Defendant argues that Plaintiff has challenged the use of a bail schedule, which O.C.G.A. § 17-6-1(f)(1) specifically endorses.  (Resp. Pl.'s Mot. Prelim. Inj. at 24.)

38

According to Defendant, "for Plaintiff to actually win his challenge to [Defendant's] use of a bail schedule, Plaintiff, in reality, will have to ask this Court to find O.C.G.A. § 17-6-1(f)(1) to be unconstitutional." (Id.)  Defendant complains that Plaintiff has not added the State of Georgia as a party or given notice to Georgia's Attorney General, which is required by 28 U.S.C. § 2403(b) and O.C.G.A. § 9-4-7(c). (Id. at 24-25.)   At a minimum, Defendant contends that "Georgia's Attorney General should be provided notice and invited to intervene in this case." (Id. at 25.)

### 3.    Plaintiff's Reply

In his reply, Plaintiff points out that he is challenging Defendant's policies, not the facial constitutionality of O.C.G.A. § 17-6-1(f)(1).   (Reply Supp. Mot. Prelim. Inj.

AO 72A
(Rev.8/8
2)

(Docket Entry No. 34) at 1.)  Plaintiff argues that the fact that Defendant may have adopted new bail procedures in the middle of the case does not moot Plaintiff's claim, particularly where Defendant argues that it did not violate the law.  (Id. at 3.)  Plaintiff also contends that the new bail procedures do not cure the constitutional violation that underlies this case.  (Id. at 3-5.)  Plaintiff notes: "The new policy is unconstitutional in the same way the old one was. Under the new standing order, [Defendant] simply proposes to hold indigent arrestees for two days instead of four or five days.  The same constitutional arguments in Plaintiff's prior briefing apply here."  (Id. at 4.)  Plaintiff argues that even if the new policy corrected the constitutional violation, it would not moot this case unless Defendant could show that it is

40

absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur, and that Defendant cannot make that showing.   (Id. at 5-7.)   According to Plaintiff, Defendant has not shown that the new policy is permanent, Defendant contends that both bail policies are lawful, and Defendant implemented the new policy nearly three months after Plaintiff filed this lawsuit.  (Id. at 6.)

Plaintiff also contends that he has a substantial likelihood of succeeding on the merits of his claims, as the bail policy violates the rights of indigent arrestees.  (Reply Supp. Mot. Prelim. Inj. at 7-11.) Plaintiff notes that although Defendant argues that bail schedules are not categorically unconstitutional and that Georgia has statutory procedures governing setting bail, Plaintiff is not seeking to outlaw bail

41

schedules and is not challenging Georgia's bail statutes or procedures.  (Id. at 9.)  Plaintiff observes that "at all times relevant to his complaint, [Plaintiff] was presumed innocent of wrongdoing and thus had no duty to pay a penalty to [Defendant]." (Id.)  Plaintiff further argues that Defendant's "Response fails to appreciate the significance of depriving a person of liberty or to recognize its heavy burden to justify its detention policy."  (Id. at 10.)  Plaintiff contends that Defendant cannot satisfy its burden, because (1) "[t]he policy applied to misdemeanor arrestees does not serve a 'legitimate and compelling' interest in protecting society or securing attendance at trial because it tests only arrestees' immediate financial resources, not their flight risk or danger to the community" (id. at 11); and (2) "the policy is not

42

'closely tailored to effectuate' compelling interests, since everyone can be released on bail, no matter how likely they are to abscond or reoffend, as long as they pay a predetermined sum" (id.).

Plaintiff also contends that Defendant is responsible for the bail policy, noting that the municipal court judge acts on behalf of Defendant, as does the police chief who enforces the policy. (Reply Supp. Mot. Prelim. Inj. at 12-17.) Plaintiff points out: "[Defendant's] claim that it does not control the policy fatally undermines its mootness argument. [Defendant] claims that it is merely following the direction of a person whom [Defendant] claims that it cannot control. If [Defendant] cannot control that person, then it cannot ensure that the person will not revert to the old policy

43

tomorrow." (Id. at 12 n.10.) According to Plaintiff, under Georgia law, a municipal court is a municipal office of a municipality and acts on behalf of the municipality, not the State. (Id. at 13.) Plaintiff points out that Defendant exercises significant powers over the municipal court, and any claim that Defendant has little authority to change that court's bail practices results from Defendant's decision to take a hands-off approach to the municipal court, not from a requirement of Georgia law. (Id. at 13-15.) Plaintiff also notes that, even if the municipal judge is not a policymaker for Defendant in this area, the police chief is the custodian of all Defendant's arrestees and can be enjoined from committing constitutional violations through enforcing the bail policy. (Id. at 15-17.)

44

Plaintiff further notes that this is not a case in which Plaintiff seeks habeas relief, as a favorable result would not necessarily cause Plaintiff to be released from prison faster. (Reply Supp. Mot. Prelim. Inj. at 17-20.) As such, Plaintiff argues that he can bring this action under § 1983 instead of via a habeas petition. (Id.)

Plaintiff also argues that the relief sought in this case would not require the Court to invalidate O.C.G.A. § 17-6-1(f)(1) or to ban bail schedules. (Reply Supp. Mot. Prelim. Inj. at 20-21.) As such, Plaintiff contends that the State Attorney General need not be given notice of this action and an opportunity to intervene. (Id.)

Plaintiff next contends that he and the putative class members will suffer irreparable harm absent an injunction,

45

as they will suffer unnecessary deprivations of liberty. (Reply Supp. Mot. Prelim. Inj. at 21.)  Plaintiff argues that the balance of harms favors him, as Defendant can bring its bail system into compliance with the Constitution without wreaking administrative and procedural havoc.  (Id. at 21-22.) Finally, Plaintiff contends that injunctive relief will serve the public interest by enjoining an unconstitutional policy. (Id. at 22.)

Plaintiff also argues that the Court should waive the security bond requirement.  (Reply Supp. Mot. Prelim. Inj. at 22-23.)  Plaintiff notes that he is indigent and that the Court has discretion to waive bond.  (Id. at 22.)  Plaintiff further notes that the Court may waive a bond where the plaintiff is indigent.  (Id. at 23.)

46

## C.   Discussion

### 1.   Standard for Obtaining an Injunction

A party seeking a temporary restraining order or preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs the harm the temporary restraining order would inflict on the non-movant; and (4) that the temporary restraining order would not be adverse to the public interest. LSSI Data Corp. v. Comcast Phone, LLC, 696 F.3d 1114, 1119 (11th Cir. 2012). "[A] [temporary restraining order or preliminary injunction] is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these

47

prerequisites." <u>SunTrust Bank v. Houghton Mifflin Co.</u>, 252 F.3d 1165, 1166 (11th Cir. 2001) (per curiam) (citation omitted). "The standard for a permanent injunction is essentially the same as for a preliminary injunction except that the plaintiff must show actual success on the merits instead of a likelihood of success." <u>Klay v. United Healthgroup, Inc.</u>, 376 F.3d 1092, 1097 (11th Cir. 2004) (internal quotation marks and citation omitted).

### 2.   Substantial Likelihood of Success

For the following reasons, the Court finds that Plaintiff has a substantial likelihood of succeeding on the merits of his claims. Certainly, keeping individuals in jail solely because they cannot pay for their release, whether via fines, fees, or a cash bond, is impermissible. <u>Tate v. Short</u>, 401

U.S. 395, 398 (1971); <u>Williams v. Illinois</u>, 399 U.S. 235, 240-41 (1970); <u>Smith v. Bennett</u>, 365 U.S. 708, 709 (1961); <u>Griffin v. Illinois</u>, 351 U.S. 12, 19 (1956).  Any bail or bond scheme that mandates payment of pre-fixed amounts for different offenses to obtain pretrial release, without any consideration of indigence or other factors, violates the Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment generally prohibits "punishing a person for his poverty."  <u>See</u> <u>Bearden v. Georgia</u>, 461 U.S. 660, 671 (1983).  This principle has special implications as it relates to depriving a person of his liberty.  Attempting to incarcerate or to continue incarceration of an individual because of the individual's inability to pay a fine or fee is

49

impermissible. <u>See</u> <u>Tate</u>, 401 U.S. at 397-98 ("Although the instant case involves offenses punishable by fines only, petitioner's imprisonment for nonpayment constitutes precisely the same unconstitutional discrimination since . . . petitioner was subjected to imprisonment solely because of his indigency." (footnote omitted)); <u>Williams</u>, 399 U.S. at 240-41 ("We conclude that when the aggregate imprisonment exceeds the maximum period fixed by the statute and results directly from an involuntary nonpayment of a fine or court causes we are confronted with an impermissible discrimination that rests on ability to pay."); <u>see also</u> <u>Smith</u>, 365 U.S. at 709 ("We hold that to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his

50

liberty is to deny that prisoner the equal protection of the laws."). This is especially true where the individual being detained is a pretrial detainee who has not yet been found guilty of a crime. See Pugh, 572 F.2d at 1056 ("We view such deprivation of liberty of one who is accused but not convicted of crime as presenting a question having broader effects and constitutional implications than would appear from a rule stated solely for the protection of litigants.").[1]

The former United States Court of Appeals for the Fifth Circuit has observed that a bond scheme that did not take into account indigency would fail to pass constitutional

---

[1] Opinions of the United States Court of Appeals for the Fifth Circuit issued prior to October 1, 1981, the date marking the creation of the United States Court of Appeals for the Eleventh Circuit, are binding precedent on this Court. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209-11 (11th Cir. 1981) (en banc).

AO 72A
(Rev.8/8
2)

muster.   See Pugh, 572 F.2d at 1057 ("Utilization of a master bond schedule provides speedy and convenient release for those who have no difficulty in meeting[] its requirements.   The incarceration of those who cannot, without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements." (footnote omitted)).[2]   Indeed, several recent cases that have addressed the issue have concluded that such a scheme is unconstitutional.  Cooper v. City of Dothan, Case No. 1:15-CV-425-WKW [WO], slip op. at 3-4 (M.D. Ala. June 18, 2015) (finding that a plaintiff

---

[2]The Fifth Circuit described a "master bond schedule" as "a schedule with the amount of a bond specified for each listed offense," which "contemplates that each accused's pretrial money bail is to be set automatically on the basis of the offense charged." Pugh, 572 F.2d at 1057 n.6.

AO 72A
(Rev.8/8
2)

had a substantial likelihood of success on his challenge to a bond schedule similar to that originally used by Defendant); Pierce v. City of Velda City, Case No. 4:15-cv-570-HEA, slip op. at 1 (E.D. Mo. June 2, 2015) (unpublished).   Other courts have indicated that such schemes would be unconstitutional.  See United States v. Flowers, 946 F. Supp. 2d 1295, 1301 (M.D. Ala. May 22, 2013) ("It is unconstitutional to keep a defendant in prison longer than the maximum time for her crime merely because she is unable to pay a court-ordered fine, and, similarly, it violates the Constitution's guarantee of equal protection under the laws to convert a fine-only sentence into a prison term based on inability to pay.   The Constitution likewise prohibits courts from revoking a term

53

AO 72A
(Rev.8/8
2)

of probation for failure to pay a fine or restitution, absent evidence that the probationer's failure to pay was willful. While relative wealth and poverty will inevitably have some effect on the administration of justice, any sentence that subjects a criminal defendant to imprisonment solely because of . . . indigency is constitutionally infirm and cannot stand." (alteration in original) (internal quotation marks and citations omitted)); Williams v. Farrior, 626 F. Supp. 983, 985 (S.D. Miss. Jan. 14, 1986) ("For purposes of the Fourteenth Amendment's Equal Protection Clause, it is clear that a bail system which allows only monetary bail and does not provide for any meaningful consideration of other possible alternatives for indigent pretrial detainees infringes on both equal protection and due process

54

requirements."); <u>see also</u> <u>Alabama v. Blake</u>, 642 So. 2d

959, 968 (Ala. 1994) ("Under the scheme established by the

Act, a defendant with financial means . . . can obtain

immediate release simply by posting bail.  However, an

indigent defendant charged with a relatively minor

misdemeanor who cannot obtain release by cash bail, a bail

bond, or property bail, must remain incarcerated for a

minimum of three days, and perhaps longer, before being

able to obtain judicial public bail.  We conclude that, as

written, article VII of the Act violates an indigent defendant's

equal protection rights guaranteed by the United States

Constitution."); <u>Lee v. Lawson</u>, 357 So. 2d 1019, 1024

(Miss. 1979) ("A consideration of the equal protection and

due process rights of indigent pretrial detainees leads us to

55

the inescapable conclusion that a bail system based on monetary bail alone would be unconstitutional.").  The bail policy under which Plaintiff was arrested clearly is unconstitutional.   Further, although the Standing Order attempts to remedy the deficiencies of the earlier bail policy, it simply shortens the amount of time that indigent arrestees are held in jail to forty-eight hours.  As discussed above, however, any detention based solely on financial status or ability to pay is impermissible.

Second, contrary to Defendant's arguments, Plaintiff has standing to pursue his claims.  To satisfy Article III's standing requirements, a plaintiff:

> [First] must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second,

AO 72A
(Rev.8/8
2)

there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks, alterations, and citations omitted). "In a claim for prospective relief, . . . a plaintiff must show a real and immediate threat of future harm." Cook v. Bennett, 792 F.3d 1294, 1298 (11th Cir. 2015).  Here, Plaintiff was released after his counsel filed this action, later paid his fine, and, as such, was not required to appear in court. The fact that Plaintiff may have been released from jail and eventually paid his fine does not deprive him of standing. When Plaintiff filed this lawsuit, he was detained as a result

57

of being financially unable to post bond, and his "injury was at that moment capable of being redressed through injunctive relief." Cnty. of Riverside v. McLaughlin, 500 U.S. 44, 51 (1991). Under those circumstances, Plaintiff clearly has standing to pursue his claim.

Further, the fact that Defendant changed its bail policy after Plaintiff filed this lawsuit does not deprive Plaintiff of standing. Defendant's change to its Standing Order came about voluntarily some time after Plaintiff filed this lawsuit, and there is no guarantee that Defendant will not revert back to its previous bail policy at some point. Further, as previously noted, the Standing Order gives rise to some of the same concerns as the previous bail policy. Given Plaintiff's evidence that he is indigent, it is entirely

58

foreseeable that Plaintiff might be subject to arrest and detention in violation of his rights even under the new Standing Order. See Church v. City of Huntsville, 30 F.3d 1332, 1338-39 (11th Cir. 1994) (observing that, in lawsuit that sought to bar a city from harassing or removing the plaintiffs from the city because of the plaintiffs' homeless status, the plaintiffs, who were involuntarily homeless, could not "avoid future exposure to the challenged course of conduct in which the City allegedly engages," and could pursue their claims). As such, Defendant's new Standing Order does not deprive Plaintiff of standing or render this case moot.

Defendant's new Standing Order also does not moot this case. "Generally, a case becomes moot only when it is

59

AO 72A
(Rev.8/8
2)

impossible for a court to grant any effectual relief whatever to the prevailing party."  Cook, 792 F.3d at 1299 (internal quotation marks and citation omitted).  "When a defendant voluntarily ceases the activity that forms the basis of the lawsuit, a federal court does not necessarily lose jurisdiction."  Id.  "Instead, the party asserting mootness must show that subsequent events [have] made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  Id. (alteration in original) (internal quotation marks and citation omitted).  Indeed, "[v]oluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction."  Id. (internal quotation marks and citation omitted).

Admittedly, "[w]hen the government is the defendant, [courts] extend a reasonable presumption that government actors are unlikely to resume illegal activities," and "[t]his presumption is particularly warranted in cases where the government repealed or amended a challenged statute or policy—often a clear indicator of unambiguous termination." Id. at 1299-1300 (internal quotation marks and citation omitted).   Here, however, the changes in the Standing Order "are insufficient to render this case moot . . . because it is not absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur."   Id. at 1300 (internal quotation marks and citation omitted).   There is no guarantee that Defendant will not return to its former bail policy, and, as previously noted, the new Standing Order

61

presents some of the same concerns that arose from the former bail policy. Under those circumstances, the Court finds that Plaintiff's claims are not moot. See Cook, 792 F.3d at 1300 (finding that changes in Florida law and in school districts' policies after filing of a lawsuit did not render the case moot, as a real possibility remained that the districts could implement policies with effects similar to the policies and law at issue in the lawsuit).

Defendant also argues that it has no control over the actions of the Municipal Court, and that it consequently does not control the bail policy. Under Georgia law, however, a "municipal court is a municipal office discharging strictly municipal functions." Ward v. City of Cairo, 276 Ga. 391, 393, 583 S.E.2d 821, 823 (2003). A municipal court is

62

thus distinguishable from a superior court or other court of record.  See generally City of Lawrenceville v. Davis, 233 Ga. App. 1, 502 S.E.2d 794 (1998).  Indeed, under Georgia law, "the governing authority of each municipal corporation within this state having a municipal court, as provided by the Act incorporating the municipal corporation or any amendments thereto, is authorized to appoint a judge of such court," and "[a]ny person appointed as a [municipal court judge] shall possess such qualifications and shall receive such compensation as shall be fixed by the governing authority of the municipal corporation and shall serve at the pleasure of the governing authority." O.C.G.A. § 36-32-2(a).  Georgia law is quick to point out that this statute "shall not be construed to require the governing

63

authority of any municipal corporation to appoint a judge;

but such governing authority may appoint a judge if, acting

in its sole discretion, the governing authority determines that

such appointment would be in the best interest of the

municipal corporation." O.C.G.A. § 36-32-2(b). A municipal

court is thus a very different creature than a superior court,

which generally would be considered to be a state entity.

Further, given Defendant's own City Code, it is abundantly

clear that Defendant possesses considerable control over

the municipal court.[1] In any event, Defendant certainly has

---

[1]Article VI of Defendant's City Code governs the municipal court. (City Code Art. VI.) Section 6-101 creates the municipal court. (Id. Art. VI, Sec. 6-101.) Section 6-102 governs chief and associate judges of the municipal court. (Id. Art. VI, Sec. 6-102.) Notably, the mayor and council set the compensation for the municipal court judges, and the judges "shall be appointed by the mayor and council and shall serve at the pleasure of the mayor and council, subject to removal, with or without any stated cause, upon a majority vote by the mayor and counsel." (Id. Art. VI, Sec. 6-

64

control over its chief of police, who is the custodian of Defendant's arrestees. See O.C.G.A. § 42-4-1(b) ("By virtue of their offices, chiefs of police are the jailers of the municipal corporations and have the authority to appoint other jailers, subject to the supervision of the municipal governing authority, as prescribed by law."). The Court therefore rejects this argument.

------

102(a)(1).) The City Code also sets the qualifications for municipal court judges. (Id. Art. VI, Sec. 6-102(a)(2).) Further, under the City Code, the mayor and council may fill vacancies in the office of the chief municipal judge by appointment if the vacancies occur "by reason of death, resignation, removal or other reason." (Id. Art. VI, Sec. 6-102(c).) Section 6-103 governs convening the municipal court, and provides that "[t]he court shall sit at a place designated by the mayor and council." (Id. Art. VI, Sec. 6-103.) Section 6-104 sets forth the municipal court's jurisdiction, which consists of "violations of city ordinances" and "[t]he prosecution of traffic offenses as set forth in O.C.G.A. Title 40," among other things. (Id. Art. VI, Sec. 6-104.)

The Court also finds unpersuasive Defendant's argument that Plaintiff should have brought his challenge in a petition for a writ of habeas corpus. As Plaintiff points out, a successful challenge to this litigation would not necessarily shorten Plaintiff's time in custody. As such, this case need not have been brought in a petition for a writ habeas corpus action, but may properly proceed under § 1983. See Skinner v. Switzer, 562 U.S. 521, 525 (2011) ("Habeas is the exclusive remedy . . . for the prisoner who seeks 'immediate or speedier release' from confinement. Where the prisoner's claim would not 'necessarily spell speedier release,' however, suit may be brought under § 1983." (quoting Wilkinson v. Dotson, 544 U.S. 74, 82 (2005)). Such a result is especially appropriate where, as

66

here, a plaintiff seeks prospective injunctive relief.  <u>See</u> <u>Edwards v. Balisok</u>, 520 U.S. 641, 648 (1997) (concluding that request for prospective injunctive relief seeking to require prison officials to date-stamp witness statements when received could be brought under § 1983).

Finally, the Court is not persuaded by Defendant's argument that Plaintiff is challenging a state statute.  It is abundantly clear that Plaintiff is not challenging the requirements or provisions of O.C.G.A. § 17-6-1 or bail schedules <u>per se.</u>  As such, this argument is misplaced.

In sum, the Court finds that Plaintiff has a substantial likelihood of succeeding on the merits of his claims.  This factor therefore counsels in favor of granting injunctive relief.

67

### 3.   Irreparable Harm

As previously noted, Plaintiff has suffered an improper loss of liberty by being jailed simply because he could not afford to post money bail.    This constitutes irreparable harm.   See Rodriguez v. Providence Cmty. Corrs., Inc., Case No. 3:15-CV-01048, --- F. Supp. 3d ---, ---, 2015 WL 9239821, at *9 (M.D. Tenn. Dec. 17, 2015) (finding that irreparable harm requirement was satsified based on "the unconstitutional liberty deprivation which stems from Defendants' practice of jailing probationers on secured money bonds with[out] an indigency inquiry").   This factor therefore counsels in favor of granting injunctive relief.

### 4.   Balance of Harms

68

The Court further finds that the balance of harms favors Plaintiff.  Although Defendant contends that modifying its bail system will create significant administrative and procedural problems and will result in the release of individuals who pose a risk or danger to the community, Defendant fails to acknowledge that its current system of releasing arrestees as soon as they post bond does nothing to address either of those concerns.  Any difficulties that Defendant may suffer if the Court grants injunctive relief are not so significant as to outweigh the important constitutional rights at issue.  This factor therefore counsels in favor of granting injunctive relief.

### 5.   Public Interest

69

The public interest supports preventing the violation of a party's constitutional rights.  See Simms, 872 F. Supp. 2d at 105 ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (internal quotation marks and citation omitted); see also Giovani Carandola, Ltd., 303 F.3d at 521 (noting that "upholding constitutional rights surely serves the public interest").  This factor therefore counsels in favor of granting injunctive relief.

### 6.   Bond

The Court has discretion to waive the bond requirement.  Fed. R. Civ. P. 65(c); City of Atlanta v. Metro. Atlanta Rapid Transit Auth., 636 F.2d 1084, 1094 (5th Cir.

70

Unit B 1981); <u>Corrigan Dispatch Co. v. Casaguzman, F.A.</u>, 569 F.2d 300, 303 (5th Cir. 1978).  The Court finds that waiving a bond is appropriate because Plaintiff and the Class members are indigent.  <u>See</u> <u>Wayne Chem., Inc. v. Columbus Agency Serv. Corp.</u>, 567 F.2d 692, 701 (7th Cir. 1977) (noting court may waive bond on grounds of indigence).  Although Defendant argues that the organization driving this lawsuit and other similar lawsuits is not indigent, the Court cannot find that requiring the organization driving this lawsuit to pay the bond is warranted.  The Court therefore exercises its discretion to waive the bond requirement.

71

## 7. Summary

In sum, the Court finds that Plaintiff has met his burden to obtain a preliminary injunction. The Court therefore grants Plaintiff's Motion for Preliminary Injunction, and orders Defendant to implement post-arrest procedures that comply with the Constitution, and further orders that, unless and until Defendant implements lawful post-arrest procedures, Defendant must release any other misdemeanor arrestees in its custody, or who come into its custody, on their own recognizance or on an unsecured bond in a manner otherwise consistent with state and federal law and with standard booking procedures. Defendant may not continue to keep arrestees in its custody

72

for any amount of time solely because the arrestees cannot afford a secured monetary bond.

## III. Conclusion

ACCORDINGLY, the Court **GRANTS** Plaintiff's Motion for Preliminary Injunction [4]. The Court **ORDERS** Defendant to implement post-arrest procedures that comply with the Constitution, and further **ORDERS** that, unless and until Defendant implements lawful post-arrest procedures, Defendant must release any other misdemeanor arrestees in its custody, or who come into its custody, on their own recognizance or on an unsecured bond in a manner otherwise consistent with state and federal law and with standard booking procedures. Defendant may not continue to keep arrestees in its custody

73

AO 72A
(Rev.8/8
2)

for any amount of time solely because the arrestees cannot afford a secured monetary bond.

IT IS SO ORDERED, this the ⅃8day of January, 2016.

_____

UNITED STATES DISTRICT JUDGE

74

AO 72A
(Rev.8/8
2)