IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

MAURICE WALKER, on
behalf of himself and others
similarly situated,

     Plaintiff,

v.

                  CIVIL ACTION FILE NO.:
                  4:15-CV-0170-HLM

CITY OF CALHOUN, GEORGIA,

     Defendant.

## ORDER

This case is before the Court on the Court's April 7,

2017, Order [56] and on the Court's own Motion.

# I.   Background

## A.   Factual Background

The Court incorporates the Background portion of its January 28, 2016, Order relating to Plaintiff's allegations and Defendant's materials into this Order as if fully set forth herein.  (Order of Jan. 28, 2016 (Docket Entry No. 40) at 2-25.)

Defendant submitted a second affidavit from Matthew Chad Silvers in opposition to Plaintiff's renewed request for a preliminary injunction.  (Second Aff. of Matthew Chad Silvers (Docket Entry No. 63).)  Mr. Silvers states that, prior to January 28, 2016, the Municipal Court of Calhoun, Georgia (the "Municipal Court") allowed for individuals to be released from pre-trial detention in the Gordon County Jail

2

AO 72A
(Rev.8/8
2)

by posting a secured pre-trial bond, which could be made via the payment of currency, the posting of property, or the employment of a local surety.  (Id. ¶ 9.)  According to Mr. Silvers, during a period of approximately fifteen months immediately before January 28, 2016, the Municipal Court issued twenty-seven bench warrants for individuals who posted one of the forms of the secured pre-trial bonds. (Id. ¶ 10 & Ex. E.)  After January 28, 2016, when the Court issued its first preliminary injunction Order, "the Municipal Court immediately initiated a policy of having all detained individuals released only on a pre-trial recognizance bond issued."  (Id. ¶ 11.)  Mr. Silvers states that, during a period of approximately fifteen months afterward, the Municipal

3

Court issued eighty-five bench warrants for individuals released on recognizance.  (Id. ¶ 12 & Ex. F.)

Between October 28, 2014, and January 28, 2016, 5,374 cases were docketed in the Municipal Court (Second Silvers Aff. ¶ 13), while 5,559 cases were docketed in the Municipal Court between January 29, 2016, and May 8, 2017 (id. ¶ 14).  Mr. Silvers notes that the Municipal Court issued thirty-four bench warrants for failure to appear for the cases filed between October 28, 2014, and January 28, 2016, and that each of those defendants were released after posting some form of secured bail or bond.  (Id. ¶ 16.) In contrast, the Municipal Court issued eighty-five bench warrants for failure to appear for the cases filed between January 29, 2016, and May 8, 2017, and each of those

4

defendants had been released on his or her own recognizance after initial arrest. (Id. ¶ 17.) Mr. Silvers asserts that, after January 28, 2016, "the number of bench warrants issued for individuals who failed to appear before the Municipal Court increased by approximately one hundred and fifty percent (150%) in merely 15 months." (Id. ¶ 20.)

Mr. Silvers notes that the Honorable Suzanne Hutchinson Smith serves as the Chief Judge of the Municipal Court, that Judge Smith has served as the Chief Judge of the Municipal Court since approximately 1995, and that the position is presently budgeted to pay $2,000 per month. (Second Silvers Aff. ¶ 21.) Judge Smith also serves as a Superior Court Judge for the Cherokee Judicial

5

Circuit, and she has served in that position since April 2014. (Id. ¶ 22.)   Defendant's Mayor and City Council have not appointed another individual to preside over the Municipal Court, and they have never appointed associate judges. (Id. ¶ 23.)  On the rare occasions when Judge Smith is not available to preside over a regularly-scheduled Municipal Court session, she has appointed either the Probate Judge of Gordon County or Gordon County's County Attorney to serve as Judge pro tempore for that session of court.  (Id. ¶ 24.)   According to Mr. Silvers, "[a]t all times, these individuals abide by all of the policies and procedures established by Judge Smith in her absence."  (Id.)

Mr. Silvers states that, during the seventeen years that he has worked for the Municipal Court, he has known Judge

6

Smith to "act with complete independence from the Mayor and City Council," and he has "never witnessed any attempt by the governing authority to change the way that the court is administered, or have any input regarding the issue of bail or bond." (Second Silvers Aff. ¶ 25.)  According to Mr. Silvers, during the time that he has served as deputy clerk, "only the court staff or the Solicitor have contacted [Judge Smith] directly with regard to any issues or questions regarding inmates and their release, whether pre-trial or post conviction." (Id.)

## B.   Procedural Background

The Court incorporates the procedural background portions of its earlier Orders into this Order and adds only those procedural background facts that are relevant to the

7

instant Order. After the United States Court of Appeals for the Eleventh Circuit vacated the Court's Order granting a preliminary injunction in favor of Plaintiff based on lack of specificity and remanded the case to the Court for further proceedings, the Court entered an Order directing the Parties to notify the Court as to how the Parties believed the Court should proceed with this case. (Order of Apr. 7, 2017 (Docket Entry No. 56).) Plaintiff responded by indicating that the Court should simply enter a more specific injunction. (See generally Pl.'s Notice (Docket Entry No. 57).) Defendant filed a response indicating that it disagreed with Plaintiff's proposed approach, and requested time to respond to Plaintiff's Notice. (See generally Def.'s Notice (Docket Entry No. 58).) The Court then entered an Order

8

establishing a briefing schedule.  (Order of April 24, 2017
(Docket Entry No. 59).)  Defendant filed a response arguing
against granting a preliminary injunction, and presented
exhibits that included affidavits, Defendant's briefs on
appeal, a recording of the oral argument before the
Eleventh Circuit, and a number of amici curiae briefs filed
on appeal.   (Notice of Filing (Docket Entry No. 62)
(containing CD of oral arguments); Resp. Pl.'s Renewed
Request Prelim. Inj. (Docket Entry No. 64); Notice of Filing
(Docket Entry No. 65) (containing amicus curiae briefs).)[1]
Plaintiff filed a reply disputing the arguments raised by
Defendant, and noting that the Court should simply enter a
more specific injunction.  (See generally Reply Supp. Pl.'s

_____

[1]The Court has reviewed all of the materials presented by
Defendant.

AO 72A

(Rev.8/8

2)

Notice (Docket Entry No. 66).)  The Court finds that the matter is ripe for resolution.

## II.   Discussion

The Court finds that no hearing is necessary, as there are no significant factual disputes or credibility determinations relevant to the request for a preliminary injunction.   Cumulus Media, Inc. v. Clear Channel Commcn's, Inc., 304 F.3d 1167, 1178 (11th Cir. 2002) (internal quotation marks and citation omitted); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1313 (11th Cir. 1998). The Court also agrees with Plaintiff that the appropriate course of action here is for the Court to  issue a more specific injunction that complies with Federal Rule of Civil Procedure 65(d). See S.E.C. v. N. Am. Clearing, Inc., Case

10

No.: 6:08-cv-829-Orl-35KRS, 2013 WL 12173711, at *1-3 (M.D. Fla. Apr. 3, 2013) (entering a more specific injunction after a remand from the Eleventh Circuit due to a failure to comply with Rule 65(d)).  The Court reaffirms its previous Order granting Plaintiff's Motion for Preliminary Injunction, and incorporates the Discussion portion of that Order into this Order as if fully set forth herein.  (Order of Jan. 28, 2016, at 47-73.)

This is not an opportunity for Defendant to re-litigate the merits of the underlying preliminary injunction Order; however, for Defendant's benefit, the Court will briefly address the arguments Defendant raises in its response. First, the Court again rejects Defendant's contention that the Standing Bail Order is not a policy of Defendant for §

11

1983 purposes. With all due respect to Defendant, the new evidence presented in Mr. Silver's Second Affidavit simply does not warrant a different conclusion than the Court reached in its January 28, 2016, Order. The Court therefore rejects this argument.

Second, the Court rejects Defendant's contention that the Standing Bail Order, as it is presently worded, is constitutional. The Court notes that the Standing Bail Order is certainly an improvement over the policy in effect prior to the Standing Bail Order, and, to that extent, the Standing Bail Order is a step in the right direction. The Standing Bail Order, however, still violates the Constitution insofar as it permits individuals who have sufficient resources to post a bond (or to have one posted for them) to be released

12

AO 72A
(Rev.8/8
2)

immediately, while individuals who do not have those resources must wait forty-eight hours for a hearing. The Court rejects Defendant's contention that the Standing Bail Order's forty-eight hour waiting period for a bond hearing is constitutional because <u>Gerstein v. Pugh</u>, 420 U.S. 103 (1975), set a presumptively reasonable forty-eight hour probable cause deadline following arrest. <u>See</u> <u>Odonnell v. Harris Cty., Tex.</u>, Civil Action No. H-16-1414, --- F. Supp. 3d ---, ---, 2016 WL 7337549, at *17 (S.D. Tex. Dec. 16, 2016) ("The 48-hour probable-cause-hearing standard . . . is not a safe harbor for the defendants."). The primary issue here is that the Standing Bail Order establishes a mechanism by which non-indigent arrestees may obtain immediate release, while indigent arrestees must wait an additional forty-eight

13

hours to have an opportunity to obtain release, simply because of those arrestees' financial condition. This is impermissible.[2]

_____

[2]Defendant also is concerned about what level of scrutiny applies. Defendant is correct that, generally, an individual's indigence does not make that individual a member of a suspect class. However, case law from the Supreme Court and the Eleventh Circuit "make clear that detention based on wealth is an exception to the general rule that rational basis review applies to wealth-based classifications." Odonnell v. Harris Cty., Tex., Civil Action No. H-16-1414, --- F. Supp. 3d ---, ---, 2017 WL 1735456, at *64 (S.D. Tex. Apr. 28, 2017) (collecting cases). Indeed, under Williams v. Illinois, 399 U.S. 235 (1970), Tate v. Short, 401 U.S. 395 (1971), Bearden v. Georgia, 461 U.S. 660 (1983), and Pugh v. Rainwater, 557 F.2d 1189 (5th Cir. 1977), vacated on other grounds, 572 F.2d. 1053 (5th Cir. 1978) (en banc), "an absolute deprivation of liberty based on wealth creates a suspect classification deserving of heightened scrutiny." Odonnell, 2017 WL 1735456, at *64 (footnote omitted). "At a minimum, heightened scrutiny requires a court to evaluate the government's legitimate interest in a challenged policy or practice and then inquire whether there is a sufficient 'fit' between the government's means and ends." Id. at *66. "At a maximum, [c]lassifications created by state action which disadvantage a suspect class or impinge upon the exercise of a fundamental right are subject to strict scrutiny, and will be upheld only when they are precisely tailored to serve a compelling state interest." Id. (alteration in original) (internal

14

The Court also rejects Defendant's contention that abstention under <u>Younger v. Harris</u>, 401 U.S. 37 (1971), applies here. When determining whether <u>Younger</u> abstention applies, courts ask: (1) whether the case will interfere with "an ongoing state judicial proceeding"; (2) whether "the proceedings implicate important state interests"; and (3) whether there is "an adequate opportunity in the state proceedings to raise constitutional challenges." <u>Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 432 (1982). As an

---

quotation marks and citation omitted). Admittedly, "[s]tate and local governments have a compelling interest in assuring the presence at trial of persons charged with a crime." <u>Id.</u> (internal quotation marks, citation, and footnote omitted). Given that Plaintiff bears the "burden to show a likelihood of success on the merits, the court applies the tailoring requirement of intermediate scrutiny." <u>Id.</u> at *67.

15

initial matter, Plaintiff and the other similarly-situated individuals are not challenging the merits of their prosecutions, but rather, are challenging the legality of their pretrial detention--an issue that cannot be raised in the criminal prosecutions.  See Gerstein, 420 U.S. at 108 n.9 (concluding that Younger absention did not apply where the request for an "injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution"); Odonnell, 2016 WL 7337549, at *19 ("The plaintiffs challenge the legality of detaining misdemeanor arrestees who are otherwise eligible for release pending trial or guilty plea without timely judicial consideration of the inability to pay a

16

bail bond.  Resolving this issue does not affect the merits of subsequent criminal prosecutions.  The inability to pay bail cannot be raised as a defense in a subsequent criminal prosecution.").   Plaintiff and the other similarly-situated individuals would not have an adequate opportunity to raise their constitutional challenges before the Municipal Court, and <u>Younger</u> abstention consequently does not apply. <u>See</u> <u>Rodriguez v. Providence Cmty. Corrs., Inc.</u>, 155 F. Supp. 3d 758, 766 (M.D. Tenn. Dec. 17, 2015) ("The harm alleged–that probationers do not receive inquiries into indigency as required by the Fourteenth Amendment–has been inflicted before a probationer could voice any constitutional concerns. This alleged constitutional infirmity could be remedied without affecting the underlying state

17

AO 72A

(Rev.8/8

2)

court judgments.    Accordingly, <u>Younger</u> abstention is inappropriate.").  The Court therefore rejects this argument.

Finally,   the   Court   concludes   that   Defendant's arguments concerning an increase in failures to appear are immaterial.  As an initial matter, the Court's January 28, 2016, Order did not require Defendant to release all arrestees on their own recognizance.  The Court simply ordered Defendant to "implement post-arrest procedures that comply with the Constitution" or offer indigent arrestees release "on their own recognizance or on an unsecured bond." (Order of Jan. 28, 2016, at 73.)  Although the Court acknowledges that its lack of specificity may have caused confusion on Defendant's part, the Court did not intend to require Defendant to release each and every arrestee on

18

his or her own recognizance.  Thus, the increase in arrests

for failure to appear does not, in and of itself, affect the

propriety of injunctive relief. Indeed, other alternatives exist,

including unsecured bonds, in which an arrestee need not

pay money in advance but may be released with an

obligation to pay the amount listed in the bail schedule if the

arrestee fails to appear for his or her scheduled court date.[3]

---

[3]The Court rejects Defendant's contention that Georgia law does not provide for unsecured bonds in misdemeanor cases. O.C.G.A. § 17-6-1(i) provides that "the term 'bail' shall include the releasing of a person on such person's own recognizance." O.C.G.A. § 17-6-1(i).  Further, Georgia Uniform Municipal Court Rule 18.3 provides that "[b]ail may be conditioned upon such other specified and reasonable conditions as the court may consider just and proper." Ga. Unif. Mun. Ct. R. 18.3.  Surely, those conditions could include an unsecured bond.  Indeed, Defendant's Standing Bail Order already provides that "[a]ll persons charged with violations of the Code of Calhoun, Georgia who have no outstanding failure to appear arrest warrant from the City of Calhoun, or any other similar governing authority duly established by the Georgia General Assembly or the Constitution of the State of Georgia, shall be released on an unsecured appearance bond

AO 72A (Rev.8/8 2)

Importantly, nothing in the January 28, 2016, Order purported to require release of <u>all</u> arrestees on their own recognizance, as the Order addressed only <u>indigent</u> arrestees.[4]  Non-indigent arrestees may still be required to post bail in accordance with the bail schedule in the Standing Bail Order.  Finally, as Plaintiffs point out, even if Defendant decided to retain secured bonds, it could distinguish arrestees who are able to pay from indigent arrestees without requiring anyone to remain in jail for forty-

---

in the amount established by [the Standing Bail Order's] bail schedule." (Standing Bail Order (Docket Entry No. 29-5) at 6-7.)

[4]Thus, arguments that the Court's January 28, 2016, Order somehow is intended to abolish or undermine the entire system of monetary bail in this country are clearly misplaced.  The Court has no problem with monetary bail or with the bail bond industry in general.  The Court's concern in this case is for indigent arrestees who cannot afford to post bail or pay a surety a percentage of a bond.  Those individuals would not be using the bail bond industry or system even if the Court declined to enter an injunction.

AO 72A

(Rev.8/8
2)

eight hours prior to a hearing.  (Reply Supp. Notice at 11.) During the booking process or shortly after booking, Defendant could require arrestees who claim to be indigent to complete a sworn affidavit, under threat of prosecution for perjury or false statements, attesting to their financial resources and their inability to pay.  (Id.)  Defendant could validly detain any individual who refused to sign the affidavit, and it could require any arrestee with the financial means to do so to post a monetary bond in accordance with the Standing Bail Order.  (Id.)  Defendant's argument concerning an increase in failures to appear after the January 28, 2016, Order does not warrant reconsidering injunctive relief.

21

In sum, the Court concludes that none of Defendant's arguments in its response to Plaintiff's Notice warrant denying or reconsidering injunctive relief.  The Court will enter another, more specific, preliminary injunction.

## III. Conclusion

ACCORDINGLY, the Court **GRANTS** Plaintiff's Motion for Preliminary Injunction [4].  The Court **ORDERS AS FOLLOWS**:

Defendant shall, unless and until otherwise ordered by this Court, comply with the following:

(1)  Defendant is prohibited from detaining indigent misdemeanor or Calhoun Municipal ordinances arrestees who are otherwise eligible for release but are unable,

22

because of their poverty, to pay a secured or money bail in accordance with the Standing Bail Order.

(2)   If an arrestee indicates that he or she is unable to pay a secured or money bail, arresting officers, jail personnel, or Municipal Court staff must, as soon as practicable after booking verify the arrestee's inability to pay a secured or money bail by means of an affidavit sworn before an authorized official.  The affidavit must give the arrestee sufficient opportunity to swear to his or her financial conditions, including the arrestee's monthly income and expenses, the value of any assets that the arrestee has, including money in bank accounts, real estate, or automobiles, and the amount of any liabilities that the arrestee may have, such as loans, liens, or other

23

obligations, and to the number of individuals living in the arrestee's household.   The affidavit also must give the arrestee an opportunity to swear as to the amount of financial security or funds that the arrestee would be able to post or pay up front, from any source, including contributions from family and friends, within twenty-four hours of arrest.  Finally, the affidavit shall give the arrestee the opportunity to swear that he or she is indigent, meaning that he or she earns less than 100 percent of the applicable federal poverty guidelines.

(3)  The standard for making an individualized determination of indigency is, as set forth in the Standing Bail Order, "that established by O.C.G.A. § 36-32-1(f) and (g), as defined by O.C.G.A. § 17-[12]-2(6)(A) regarding an

24

AO 72A

(Rev.8/8

2)

'indigent person' charged with a misdemeanor, violation of probation, or a municipal code offense punishable by imprisonment." (Standing Bail Order at 5.) Those provisions "have established an 'indigent person' or 'indigent defendant' for appointed legal counsel as one 'earning less than 100 percent of the federal poverty guidelines, unless there is evidence that the person has other resources that might be reasonably used to employ a lawyer without undue hardship on the person or his or her dependents[.]'" (Id. at 5-6 (alteration in original).) For purposes of this Order, 100 percent of the federal poverty guidelines shall specifically mean the guidelines published in the Federal Register, 82 Fed. Reg. 8831-03, 2017 WL 395763 (Jan. 31, 2017), and as may be further promulgated

AO 72A
(Rev.8/8
2)

and adopted for subsequent years in the Federal Register. For 2017, the poverty guidelines for the forty-eight contiguous States and the District of Columbia are as follows: (1) for a one-person household, $12,060; (2) for a two-person household, $16,240; (3) for a three-person household, $20,420; (4) for a four-person household, $24,600; (5) for a five-person household, $28,780; (6) for a six-person household, $32,960; (7) for a seven-person household, $37,140; (8) for an eight-person household, $41,320.[5]   82 Fed. Reg. 8831-03, 2017 WL 395963 (Jan. 31, 2017).

---

[5]For families or households with more than eight persons, $4,180 shall be added for each additional person to determine the poverty guidelines.

26

(4) If it appears, from the affidavit sworn by the arrestee, that the arrestee is indigent, according to the above standard, the arrestee shall be subject to release on his or her own recognizance without making a secured bail in accordance with O.C.G.A. § 17-6-1(i), or subject to release on an unsecured bond, with an obligation to pay the amount listed in the bail schedule set forth in the Standing Bail Order if the arrestee fails to appear for a scheduled court date. Either the arresting officer or jail personnel, or, if available, the Municipal Court Clerk or the Judge of the Municipal Court, must conduct a review of the affidavit as soon as practicable, or, at the latest, within twenty-four hours after arrest to determine whether the arrestee meets

27

the indigency requirement set forth in paragraph (3) and is subject to release.

(5)   An arrestee who is released pursuant to paragraph (4) shall be provided with written notice of the date for the next proceeding or trial.  The arrestee has the responsibility of notifying the Clerk of the Municipal Court if he or she has a change of residence or mailing address prior to adjudication and sentencing, to ensure notice of any change in the scheduled proceedings.  Arrestees who fail to appear for scheduled court proceedings may, of course, be subject to arrest for failure to appear.

(6)  As provided in the Standing Bail Order, "[a]ll persons charged with violations of The Code of Calhoun, Georgia who have no outstanding failure to appear arrest

28

warrant from the City of Calhoun, or any other similar governing authority duly established by the Georgia General Assembly or the Constitution of The State of Georgia, shall be released on an unsecured appearance bond in the amount established by the" bail schedule set forth in the Standing Bail Order.  (Standing Bail Order at 6-7.)

(7) Nothing in this Order prohibits Defendant from detaining an arrestee who is intoxicated, under the influence of drugs, or a danger to himself or herself or others such that said arrestee would not otherwise be eligible for release, until such time as that arrestee becomes eligible for release.  Defendant also may detain arrestees who are subject to outstanding active warrants or other holds preventing their release from detention, arrestees who are

29

subject to detention without bond under state or federal law, and arrestees who refuse to cooperate in determining their indigence.    Further, nothing in this Order prohibits Defendant from applying the bail schedule set forth in the Standard Bail Order to arrestees who are financially able to post bond in accordance with that schedule.

IT IS SO ORDERED, this the *16* day of June, 2017.

_____

SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/8
2)